Filed 1/14/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DOUGLAS BURDICK,<br><br>　　Petitioner,<br><br>　　v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>　　Respondent;<br><br>JOHN SANDERSON et al.,<br><br>　　Real Parties in Interest. | G049107<br><br>(Super. Ct. No. 30-2012-00621436)<br><br>O P I N I O N |

　　　　　　Original proceedings; petition for a writ of mandate/prohibition to challenge an order of the Superior Court of Orange County, Franz E. Miller, Judge. Petition granted in part and writ issued with directions.

　　　　　　Horvitz & Levy, David S. Ettinger, H. Thomas Watson; Stephens Friedland, John B. Stephens and Laura A. Forbes for Petitioner.

　　　　　　No appearance for Respondent.

Dorsey & Whitney, Kent J. Schmidt, Lynnda A. McGlinn and Karen A. Morao for Real Parties in Interest.

## INTRODUCTION

In this writ proceeding, we address whether, in a lawsuit for defamation, a nonresident defendant is subject to personal jurisdiction in California on the ground that, while in his or her state of residence, the defendant posted (and removed) allegedly defamatory statements about the plaintiff on the defendant's publicly available Facebook page.

We hold that posting defamatory statements about a person on a Facebook page, while knowing that person resides in the forum state, is insufficient in itself to create the minimum contacts necessary to support specific personal jurisdiction in a lawsuit arising out of that posting. Instead, it is necessary that the nonresident defendant not only intentionally post the statements on the Facebook page, but that the defendant expressly aim or specifically direct his or her intentional conduct at the forum, rather than at a plaintiff who lives there. We emphasize the exercise of personal jurisdiction must be based upon forum-related acts that were personally committed by the nonresident defendant, not upon the plaintiff's contacts with the forum or acts committed by codefendants or third parties.

The plaintiffs in this case—John Sanderson and George Taylor (together, Plaintiffs)—sued Douglas Burdick, an Illinois resident, for defamation and other intentional torts, based on an allegedly defamatory posting made by Burdick on his personal Facebook page while he was in Illinois. The respondent court denied Burdick's motion to quash service of summons for lack of personal jurisdiction, and Burdick has challenged that ruling by petition for writ of mandate or prohibition.

2

We conclude, based on the record before us, Plaintiffs did not meet their burden of presenting facts demonstrating that Burdick's conduct constituted minimum contacts sufficient to create personal jurisdiction under the standards set forth by the United States Supreme Court and California Supreme Court, as discussed in this opinion. We therefore grant Burdick's writ petition and direct the respondent court to vacate its order denying Burdick's motion to quash. Rather than direct the respondent court to grant the motion to quash, however, we first give that court the opportunity to rule on Plaintiffs' request to conduct jurisdictional discovery.

ALLEGATIONS, JURISDICTIONAL FACTS,
AND PROCEDURAL HISTORY

I.

**Allegations of the Complaint**

Plaintiffs filed a verified complaint and a verified first amended complaint (the Complaint), naming as defendants Nerium International, LLC (Nerium International), Nerium Biotechnology, Inc. (Nerium Biotechnology), Nerium SkinCare, Inc. (Nerium SkinCare),[1] Jeff Olson, and Burdick. The Complaint asserted six causes of action against Burdick: (1) libel per se (by Sanderson only); (2) slander per se (by Taylor only); (3) defamation (by Plaintiffs); (4) intentional infliction of emotional distress (by Plaintiffs); (5) negligent infliction of emotional distress (by Plaintiffs); and (6) invasion of privacy (by Plaintiffs).

The Complaint alleged the following:

Nerium International and Nerium SkinCare are incorporated in Texas, and Nerium Biotechnology is incorporated in Canada. The Nerium Entities are involved in the research, development, advertising, marketing, and sale of a skin care product called

---

[1] We refer to Nerium International, Nerium Biotechnology, and Nerium Skincare, collectively as the Nerium Entities.

3

NeriumAD, the active ingredient of which is an extract of the nerium oleander plant. The primary purpose of Nerium International is to market and coordinate the sales of NeriumAD through "multi-level marketing," a marketing strategy in which salespersons are compensated not only for the sales they generate, but also for sales generated by other salespersons whom they had recruited.

Olson is the chief executive officer of Nerium International, and Burdick is "another high-level and highly compensated representative of Nerium International and is the company's Corporate Consultant." Plaintiffs are physician-scientists and entrepreneurs. They have, since November 2011, maintained a noncommercial Internet blog Web site known as BareFacedTruth.com, which "discusses science and skin care" and "is dedicated to providing educational material, including information and research, relating to medical-scientific matters that are in the public interest, including skin care science."

In June 2012, Plaintiffs began to question the science behind NeriumAD and published blog entries questioning its safety and efficacy and criticizing Nerium International's multilevel marketing organization. "In response to Plaintiffs' questioning of the science behind NeriumAD and criticisms of the Nerium organization, Defendants engaged in a campaign of harassment and defamation against Plaintiffs to destroy their reputations using false and misleading information." As a precursor to this campaign, Olson conducted a recorded teleconference aired to salespeople (called "Brand Partners"), in which he referred to Plaintiffs as "blatant, jerk liars" (boldface omitted) and stated, "wait till you see what we have heading your way. It's—actually, I hate to say this, but I'm going to really enjoy the day we put it out there, quite honestly" (boldface & italics omitted).

In November 2012, Olson recorded and published on Nerium International's Web site a video recording in which he stated that an investigation had "uncovered the fact that the blogger has had 'multiple domestic violence issues.'"

4

Burdick, as his part of the campaign of harassment, in November 2012, posted on his Facebook page an announcement that "more scandalous information would be revealed regarding the 'Blogging Scorpions.'" The Facebook posting announcement stated that within a short period of time, new information would be posted on "'[w]hy he uses multiple social security numbers' and 'how many times he has been charged with domestic violence.'" Burdick posted those statements on Facebook "in his capacity as Corporate Consultant for Nerium International" and a person reading those statements would reasonably understand they referred to Sanderson or Taylor.

## II.

### Motion to Quash Service of Summons

Burdick filed a motion to quash service of summons (the motion to quash), based on lack of personal jurisdiction. With the motion to quash, Burdick submitted his own declaration stating he is an independent contractor for Paradiselife, Inc., an Illinois corporation with its principal place of business in Illinois, through which he provides consulting services to Nerium International. Burdick declared he has been a resident of Illinois since 1971. He has never lived in California; maintained an office or been employed in California; had a bank account, safe deposit box, or mailing address in California; owned or leased real property in California; had employees in California; been a party to a contract with a person or entity in California; or held any licenses or certifications issued by any governmental agency or unit in California. Burdick declared he posted and later removed the allegedly defamatory Facebook posting from his personal Facebook page while he was in the State of Illinois.

Plaintiffs filed opposition to the motion to quash, which included a declaration (with exhibits) from Sanderson and a declaration from Plaintiffs' counsel. Sanderson declared that Burdick posted defamatory material on his "publicly-available Facebook wall." Among the exhibits attached to Sanderson's declaration was a print

5

copy of the allegedly defamatory Facebook posting made by Burdick.  That posting did not mention Sanderson or Taylor by name, but referred to a "Blogging scorpion, liar, terrorist, pretencer, amateur, wanna-be, con artist."  The posting then stated:  "BOY DOES THIS 'BLOGGING SCORPION' HAVE A LOT TO HIDE!  More to come shortly about the Truth and Facts about this 'Blogging Scorpion[]', things like:  [¶] [(1)] Why he lost his medical license (yes we have the documents directly from the Medical Board of California)  [¶]  [(2)] Why he personally uses multiple social security numbers  [¶]  [(3)] How many times has he been charged with domestic violence  [¶] [(4)] Why he makes medical claims about his product that is not FDA approved (yes we have the video of him making these medical claims publically)  [¶]  [(5)] And much much more!  [¶]  Stay tuned as we reveal the 'REAL' truth behind this 'Blogging Scorpion'."

The respondent court issued a minute order denying the motion to quash. After finding that all of Plaintiffs' claims against Burdick arose out of the Facebook posting, the respondent court concluded he was subject to personal jurisdiction under the "'effects'" test of *Calder v. Jones* (1984) 465 U.S. 783, 789 (*Calder*) and *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269 (*Pavlovich*).)

## III.

### Writ Proceedings

Burdick filed a petition for peremptory writ of mandate/prohibition to challenge the respondent court's order denying his motion to quash service of summons. We summarily denied the writ petition.  The California Supreme Court granted Burdick's petition for review and transferred the matter to this court with directions to vacate the order denying mandate and to issue an order to show cause why the relief sought in Burdick's writ petition should not be granted in light of *Walden v. Fiore* (2014) 571 U.S. __ [134 S.Ct. 1115] (*Walden*), which was decided after we denied Burdick's writ petition.  This court issued an order to show cause with a briefing schedule.

6

Burdick filed a verified supplemental writ petition, to which Plaintiffs filed an unverified opposition. After Burdick filed a reply to Plaintiffs' opposition to the supplemental writ petition, oral argument was heard.

## BURDEN OF PROOF AND STANDARD OF REVIEW

"When a defendant moves to quash service of process on jurisdictional grounds, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction. [Citation.] Once facts showing minimum contacts with the forum state are established, however, it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*); see *DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1090.) The plaintiff must "'present facts demonstrating that the conduct of defendants related to the pleaded causes is such as to constitute constitutionally cognizable "minimum contacts." [Citation.]'" (*DVI, Inc. v. Superior Court*, *supra*, at pp. 1090-1091.) If a trial court denies a motion to quash service of summons brought on the ground of lack of jurisdiction, the defendant "may petition an appropriate reviewing court for a writ of mandate to require the trial court to enter its order quashing the service of summons." (Code Civ. Proc., § 418.10, subd. (c).)

When the evidence of jurisdictional facts is not in dispute, the issue whether the defendant is subject to personal jurisdiction is a legal question subject to de novo review. (*Vons*, *supra*, 14 Cal.4th at p. 449.) When evidence of jurisdiction is in dispute, we accept the trial court's resolution of factual issues, draw all reasonable inferences in support of the trial court's order, and review the trial court's determination of factual issues for substantial evidence. (*Thomson v. Anderson* (2003) 113 Cal.App.4th 258, 266-267; *Archdiocese of Milwaukee v. Superior Court* (2003) 112 Cal.App.4th 423, 434-435; *DVI, Inc. v. Superior Court*, *supra*, 104 Cal.App.4th at p. 1091.) "The ultimate question whether jurisdiction is fair and reasonable under all of the circumstances, based

7

on the facts which are undisputed and those resolved by the court in favor of the prevailing party, is a legal determination warranting our independent review." (*Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 585.)

## DISCUSSION

## I.

## General Principles of Personal Jurisdiction

California courts may exercise jurisdiction over nonresidents "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) The United States Constitution permits a state to exercise jurisdiction over a nonresident defendant if the defendant has sufficient "minimum contacts" with the forum such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.) Personal jurisdiction may be either general or specific. (*Vons*, *supra*, 14 Cal.4th at p. 445.) A nonresident defendant is subject to the forum's general jurisdiction if the defendant's contacts are "'substantial . . . continuous and systematic.'" (*Ibid.*, quoting *Perkins v. Benguet Mining Co.* (1952) 342 U.S. 437, 445, 446.) Plaintiffs have conceded Burdick is not subject to California's general jurisdiction.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on "the relationship among the defendant, the forum, and the litigation."'" (*Walden*, *supra*, 571 U.S. at p. __ [134 S.Ct. at p. 1121]; accord, *Pavlovich*, *supra*, 29 Cal.4th at p. 269.) A nonresident defendant may be subject to specific jurisdiction if three requirements are met: (1) the defendant has purposefully availed itself of forum benefits with respect to the matter in controversy; (2) the controversy is related to or arises out of the defendant's contacts with the forum; and (3) the exercise of jurisdiction would comport with fair play and substantial justice. (*Pavlovich*, *supra*, 29 Cal.4th at p. 269; *Vons*, *supra*, 14 Cal.4th at pp. 446, 447.)

8

## II.

## May California Exercise Specific Personal Jurisdiction over Burdick?

May specific jurisdiction be exercised over Burdick, an Illinois resident, based on his conduct related to the lawsuit, that is, his posting of the allegedly defamatory statements on his personal Facebook page?  When, as in this case, intentional torts are alleged, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum."  (*Walden*, *supra*, 571 U.S. at p. __ [134 S.Ct. at p. 1123].)

### A.  *The Effects Test*

#### 1.  Calder

The respondent court concluded, and Plaintiffs argue, that Burdick is subject to specific jurisdiction under the effects test.  The starting point for understanding the effects test is the United States Supreme Court decision in *Calder*, *supra*, 465 U.S. 783.  In that case, Shirley Jones, a well-known actress living in California, brought a libel suit in California against a reporter and an editor for an allegedly defamatory article published in the National Enquirer, a national weekly publication with a circulation of about 600,000 in California.  (*Id.* at pp. 784-786.)  Both the reporter and the editor worked for the National Enquirer at its headquarters in Florida.  (*Id.* at p. 785.)  The reporter and the editor moved to quash service of process on the ground neither had sufficient minimum contacts with California.  (*Id.* at pp. 786-787.)

The United States Supreme Court held that jurisdiction over the reporter and the editor in California was proper "based on the 'effects' of their Florida conduct in California."  (*Calder*, *supra*, 465 U.S. at p. 789.)  Those effects were felt in California

9

because, the court explained, "[t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California." (*Id.* at pp. 788-789, fn. omitted.) "In sum," the court concluded, "California is the focal point both of the story and of the harm suffered." (*Id.* at p. 789.) The court noted too the intentional acts of the reporter and the editor "were expressly aimed at California" in that they wrote or edited an article "they knew would have a potentially devastating impact upon respondent" and "knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation." (*Id.* at pp. 789-790.)

  2. *"Express Aiming" and* Pavlovich

  Courts have struggled with the import of *Calder* and have not applied the effects test uniformly. (*Pavlovich*, *supra*, 29 Cal.4th at p. 270.) Most courts have agreed, nonetheless, that "merely asserting that a defendant knew or should have known that his intentional acts would cause harm in the forum state is not enough to establish jurisdiction under the effects test." (*Id*. at pp. 270-271; see *Bancroft & Masters, Inc. v. Augusta Nat. Inc.* (9th Cir. 2000) 223 F.3d 1082, 1087 [courts have recognized that *Calder* "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction"].)

  To narrow the potentially broad scope of *Calder*, courts have interpreted the effects test as having an express aiming requirement and requiring the plaintiff to show (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm caused by that tort in the forum state such that the forum state was the focal point of the plaintiff's injury; and (3) the defendant expressly aimed the tortious conduct at the

10

forum state such that the forum state was the focal point of the tortious activity.[2]  (*IMO Industries, Inc. v. Kiekert AG* (3d Cir. 1998) 155 F.3d 254, 265-266.)  To satisfy the third prong, the plaintiff must show "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." (*Id.* at p. 266.)

In *Pavlovich*, the California Supreme Court addressed the meaning of the *Calder* effects test and, citing *IMO Industries, Inc. v. Kiekert AG* and *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, concluded the test requires "evidence of express aiming or intentional targeting" (*Pavlovich*, *supra*, 29 Cal.4th at p. 273), in addition to "the defendant's knowledge that his intentional conduct would cause harm in the forum" (*id.* at p. 271).  The plaintiff in *Pavlovich* alleged the defendant had misappropriated trade secrets by posting on a Web site the source code of a program that would allow users to circumvent a system used to encrypt and protect copyrighted materials on DVD's and to enable users to place decrypted materials from DVD's onto computer hard drives or other storage media.  (*Id.* at pp. 266-267.)  The California Supreme Court concluded the defendant, an Indiana resident with no California contacts, was not subject to personal jurisdiction in California because the only evidence in the record suggesting express aiming was the defendant's knowledge his conduct could harm industries centered in California.  (*Id.* at pp. 266, 278.)

3. *Effects Test and the Internet-based Defamation*

Although *Pavlovich* made "express aiming or intentional targeting" (*Pavlovich*, *supra*, 29 Cal.4th at p. 273) part of California personal jurisdiction law, it

---

[2]  The Ninth Circuit of the United States Court of Appeals has formulated the test as (1) the nonresident defendant committed an intentional act, (2) the defendant expressly aimed that act at the forum state, and (3) the act caused harm that the defendant knew likely would be suffered in the forum state.  (*Mavrix Photo, Inc. v. Brand Technologies, Inc.* (9th Cir. 2011) 647 F.3d 1218, 1228.)

11

was not a defamation case. Courts in other jurisdictions, which have considered *Calder* and the effects test in defamation actions arising out of Internet posts and advertising, have held the "mere posting of information or advertisements on an Internet website does not confer nationwide personal jurisdiction." (*Remick v. Manfredy* (3d Cir. 2001) 238 F.3d 248, 259, fn. 3.) In *Young v. New Haven Advocate* (4th Cir. 2002) 315 F.3d 256, 263, the court explained: "When the Internet activity is, as here, the posting of news articles on a website, . . . [w]e . . . ask whether the newspapers manifested an intent to direct their website content—which included certain articles discussing conditions in a [forum state] prison—to a [forum state] audience. As we recognized in *ALS Scan*[*, Inc. v. Digital Service Consultants* (4th Cir. 2002) 293 F.3d 707], 'a person's act of placing information on the Internet' is not sufficient by itself to 'subject[] that person to personal jurisdiction in each State in which the information is accessed.' [Citation.] Otherwise, a 'person placing information on the Internet would be subject to personal jurisdiction in every State,' and the traditional due process principles governing a State's jurisdiction over persons outside of its borders would be subverted. [Citations.] Thus, the fact that the newspapers' websites could be accessed anywhere, including [the forum state], does not by itself demonstrate that the newspapers were intentionally directing their website content to a [forum state] audience. Something more than posting and accessibility is needed to 'indicate that the [newspapers] purposefully (albeit electronically) directed [their] activity in a substantial way to the forum state . . .' . . . . [Citation.] The newspapers must, through the Internet postings, manifest an intent to target and focus on [forum state] readers."

Other courts have reached the same or a similar conclusion. (See, e.g., *Herman v. Cataphora, Inc.* (5th Cir. 2013) 730 F.3d 460, 465-466 [to create personal jurisdiction, allegedly defamatory statements on Web site must have "focal point" in forum state]; *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, *supra*, 647 F.3d at p. 1230 [California had jurisdiction because the subject of the defendant's Web site was "the

California-centered celebrity and entertainment industries" and Web site advertisements targeted California residents]; *Johnson v. Arden* (8th Cir. 2010) 614 F.3d 785, 796 [defamatory Internet posts did not confer Missouri jurisdiction because they did not focus on that state]; *DFSB Kollective Co. Ltd. v. Bourne* (N.D.Cal. 2012) 897 F.Supp.2d 871 [no California jurisdiction because the plaintiffs failed to show a substantial number of Web site hits came from California and Web site advertisements did not target California]; *Pooka Pooka LLC v. Safari Beach Club LLC* (N.D.Cal., Apr. 17, 2013, No. C-12-03817 DMR) 2013 U.S.Dist. Lexis 56900, p. *12 [no California jurisdiction because Web site advertisements did not target Californians]; *Facebook, Inc. v. Teachbook.com, LLC* (N.D.Cal., May 3, 2011, No. CV 10-03654 RMW) 2011 U.S.Dist. Lexis 48590, p. *7 ["The fact that an essentially passive Internet advertisement may be accessible in the plaintiff's home state without 'something more' is not enough to support personal jurisdiction . . . ."]; *Wilkerson v. RSL Funding, L.L.C.* (Tex.App. 2011) 388 S.W.3d 668, 682 ["[The defendant]'s online postings, which were made available to anyone interested in them, were not specifically directed towards Texas, and therefore do not support exercising jurisdiction over this case."]; *Dailey v. Popma* (2008) 191 N.C.App. 64, 71-74 [662 S.E.2d 12, 17-18] [following *Young v. New Haven Advocate*].)

As summed up in *Gorman v. Jacobs* (E.D.Pa. 2009) 597 F.Supp.2d 541, 548: "Exercise of personal jurisdiction would also be proper over defendants who made allegedly defamatory statements on the Internet if the content of the statements themselves are directed into the forum. [Citation.] Simply (a) knowing that the plaintiff is in the forum state, (b) posting negative statements about the plaintiff's forum-related activities, and (c) referring to the forum in one's writing will not suffice to satisfy the *Calder* effects test."

4. Walden

Recently, in *Walden*, *supra*, 571 U.S. __ [134 S.Ct. 1115], the United States Supreme Court readdressed the personal jurisdiction analysis for intentional torts. In that

13

case, the plaintiffs, who were residents of California and Nevada, sued a Georgia police officer in federal court in Nevada for an intentional tort based on actions undertaken by the police officer while serving as a deputized Drug Enforcement Administration agent in Georgia. (*Id.* at p. __ [134 S.Ct. at pp. 1119-1120].) At the Atlanta airport, the police officer had seized cash carried by the plaintiffs while they were in transit from Puerto Rico to Las Vegas. (*Id.* at p. __ [134 S.Ct. at pp. 1119-1120].) The police officer moved the cash to a secured location, and, at some point, helped to draft an affidavit, which the plaintiffs claimed was false, to show probable cause for forfeiture of the funds and forwarded that affidavit to the United States Attorney's Office in Georgia. (*Id.* at p. __ [134 S.Ct. at pp. 1119-1120].) All of the police officer's actions took place in Georgia, none took place in Nevada, where the plaintiffs filed suit, yet the Ninth Circuit Court of Appeals upheld personal jurisdiction on the ground the police officer "'expressly aimed'" his submission of the false affidavit at Nevada, knowing that doing so would affect persons with a "'significant connection'" with that state. (*Id.* at p. __ [134 S.Ct. at p. 1120].)

The United States Supreme Court held that due process did not permit the court in Nevada to exercise personal jurisdiction over the police officer. (*Walden*, *supra*, 571 U.S. at p. __ [134 S.Ct. at p. 1121].) The court confirmed that "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." (*Id.* at p. __ [134 S.Ct. at p. 1121].) The court emphasized two concepts related to this principle. "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." (*Id.* at p. __ [134 S.Ct. at pp. 1121-1122].) The plaintiff's contacts with the forum "cannot be 'decisive.'" (*Id.* at p. __ [134 S.Ct. at p. 1122].) "Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." (*Id.* at p. __ [134 S.Ct. at

14

p. 1122].)  The defendant's conduct "must form the necessary connection with the forum State that is the basis for its jurisdiction over him." (*Id.* at p. __ [134 S.Ct. at p. 1122].)

The *Walden* court explained those principles apply when intentional torts are involved and used *Calder* as an illustration of such application. (*Walden*, *supra*, 571 U.S. at p. __ [134 S.Ct. at p. 1123].)  After reviewing the nature of the contacts in *Calder*, the Supreme Court concluded:  "The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff.  The strength of that connection was largely a function of the nature of the libel tort.  However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons.  [Citations.]  Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens.  Indeed, because publication to third persons is a necessary element of libel [citation], the defendants' intentional tort actually occurred *in* California.  [Citation.]  In this way, the 'effects' caused by the defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there.  That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction." (*Walden*, *supra*, at p. __ [134 S.Ct. at pp. 1123-1124].)  The defendants in *Calder* "'expressly aimed'" their intentional conduct at California because they knew the National Enquirer had its largest circulation in California and the article would "'have a potentially devastating impact' there." (*Walden*, *supra*, at p. __, fn. 7 [134 S.Ct. at p. 1124, fn. 7].)

The Supreme Court in *Walden* applied those principles to conclude the police officer lacked the minimal contacts with Nevada to support personal jurisdiction. (*Walden*, *supra*, 571 U.S. at p. __ [134 S.Ct. at p. 1124].)  It was undisputed that no part

15

of the defendant's course of conduct occurred in Nevada; the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." (*Id.* at p. __ [134 S.Ct. at p. 1124].) "In short, when viewed through the proper lens—whether the *defendant's* actions connect him to the *forum*—petitioner formed no jurisdictionally relevant contacts with Nevada." (*Id.* at p. __ [134 S.Ct. at p. 1124].)

B. *Application of the Effects Test of* Calder*,* Pavlovich*, and* Walden

*Walden* is not a defamation case, and the Supreme Court made clear that commission of intentional torts via the Internet presented some "very different questions" which it left "for another day." (*Walden*, *supra*, 571 U.S. at p. __, fn. 9 [134 S.Ct. at p. 1125, fn. 9].) Nonetheless, *Walden*'s essential teachings and its interpretation of *Calder* directly apply to this case. *Walden* teaches that the correct jurisdictional analysis focuses on (1) the defendant's contacts with the forum, not with the plaintiff, and (2) whether those contacts create "'"'the relationship among the defendant, the forum, and the litigation'"'" necessary to satisfy due process. (*Walden*, *supra*, at p. __ [134 S.Ct. at p. 1126].) And, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." (*Id.* at p. __ [134 S.Ct. at p. 1125].)

It is undisputed Burdick has no direct contacts with California. He is an Illinois resident, has never resided or worked in California, has never owned or leased property in the state, and, by all accounts, has been in the state only twice. He is a consultant for Nerium International, a Texas corporation which markets products throughout the country. The only conduct which might connect Burdick in a meaningful way with California was the allegedly defamatory posting on his Facebook page. As the trial court found, all of Plaintiffs' claims arise out of that posting.

Plaintiffs assert the facts supporting jurisdiction are not limited to the Facebook posting because "[t]here was ample evidence that Burdick's conduct was part

16

of a far broader and more concerted scheme" and Burdick was "a principal participant in this plan to injure Californians."  But in determining personal jurisdiction, "[e]ach defendant's contacts with the forum state must be assessed individually" (*Calder*, *supra*, 465 U.S. at p. 790; see *HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1167) and "[w]here conspiracy is alleged, an exercise of personal jurisdiction must be based on forum-related acts that were personally committed by each nonresident defendant" (*CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1118; see *In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 113 ["Personal jurisdiction must be based on forum-related acts that were personally committed by each nonresident defendant.  The purposes and acts of one party—even an alleged coconspirator—cannot be imputed to a third party to establish jurisdiction over the third party defendant."]).  Thus, we consider only acts committed by Burdick personally in determining whether he is subject to jurisdiction in California.

The question under *Walden* is whether Burdick's "suit-related conduct"— the posting and removal of the allegedly defamatory Facebook post—created a "substantial connection" between Burdick and California.  (*Walden*, *supra*, 571 U.S. at p. __ [134 S.Ct. at p. 1121].)  It is undisputed Burdick posted and removed that Facebook posting while he was in his home state of Illinois.  Although it can be inferred from the posting itself that Burdick knew Plaintiffs resided in California and understood they would suffer any injury here, his knowledge that the posting could harm California residents is not enough in itself to support jurisdiction.  (*Pavlovich*, *supra*, 29 Cal.4th at p. 278.)  The substantial connection required by *Walden* is not created by Plaintiffs having suffered injury in California:  "The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff."  (*Walden*, *supra*, at p. __ [134 S.Ct. at pp. 1123-1124].)

17

We agree with those cases holding that merely posting on the Internet negative comments about the plaintiff and knowing the plaintiff is in the forum state are insufficient to create minimum contacts. *Calder*, *Pavlovich*, and *Walden* emphasize the difference between conduct directed at the plaintiff and conduct directed at the forum state itself: Those cases require, in addition to intentional conduct causing harm to a forum resident, evidence the nonresident defendant expressly aimed or intentionally targeted his or her intentional conduct at the forum state. Plaintiffs did not produce evidence to show Burdick's personal Facebook page or the allegedly defamatory posting was expressly aimed or intentionally targeted at California, that either the Facebook page or the posting had a California audience, that any significant number of Facebook "friends," who might see the posting, lived in California, or that the Facebook page had advertisements targeting Californians. Sanderson declared that Burdick's Facebook page was "publicy-available," but that fact would mean it would have been less likely Burdick had intentionally targeted California as opposed to any other jurisdiction.

Plaintiffs argue *Calder* remains controlling law and, although it was decided before the advent of the Internet, is dispositive. *Walden* did not overrule *Calder*; however, as the *Walden* court explained, key to understanding *Calder* is the defamatory article had a "California focus" in that it was specifically about an actress living in California with a California-based movie and television career, and that the reporter and editor knew the article would be published in a magazine having its largest circulation in California. (*Walden*, *supra*, 571 U.S. at p. __ & fn. 7 [134 S.Ct. at pp. 1123, 1124 & fn. 7].) The *Walden* court explained that, based on those facts, the *Calder* court concluded the reporter and the editor "'expressly aimed'" their intentional conduct at, and knew the article would have a potentially devastating impact in, California. (*Walden*, *supra*, at p. __, fn. 7 [134 S.Ct. at p. 1124, fn. 7].)

18

Such facts are absent here. Burdick declared he made the allegedly defamatory posting on his personal Facebook page while he was in Illinois. Neither Burdick's Facebook page nor the allegedly defamatory posting had a California focus like the defamatory article in *Calder*. The posting was about NeriumAD—a product sold throughout the country—and its critics. No evidence was presented that Burdick's Facebook page had its widest circulation, i.e., the greatest number of Facebook friends, in California, that Burdick expressly aimed his intentional conduct at California, or that Burdick knew the posting would cause harm connecting his conduct to California and not only to Plaintiffs.

The respondent court found *Calder* supported the exercise of personal jurisdiction over Burdick because "in the electronic age, posting on a website is analogous to publishing in a newspaper." But the court's analogy was incomplete: It did not take into account the salient facts supporting the conclusion in *Calder* that the reporter and the editor expressly aimed their conduct at California. In *Calder*, it was not the publication of the defamatory article in the National Enquirer that created jurisdiction in California. Instead, it was intentional conduct by the reporter and the editor, combined with their knowledge that the defamatory article would be published in a newspaper that had its greatest circulation in California, that created jurisdiction.

The respondent court mistakenly assumed that posting of information on the Internet with knowledge the posting might harm forum residents satisfied the express aiming requirement without evidence establishing the posting focused on California and was expressly aimed or intentionally targeted at California. Plaintiffs did not produce evidence to show the allegedly defamatory Facebook posting, which concerned critics of a product sold in all 50 states, substantially connected Burdick to California. Plaintiffs did not produce evidence that Burdick expressly aimed or intentionally targeted his intentional conduct at California, rather than at them personally, and therefore failed to

19

meet their burden of demonstrating facts justifying the exercise of personal jurisdiction over Burdick.

C. *Analogous Out-of-state Cases*

Out-of-state cases applying the effects test to Internet postings consistently support our conclusion. An analogous case is *Griffis v. Luban* (Minn. 2002) 646 N.W.2d 527 (*Griffis*), which was cited with approval in *Pavlovich*. In *Griffis*, *supra*, 646 N.W.2d at pages 530 and 535, the defendant, a Minnesota resident, posted, on an Internet newsgroup, messages that allegedly defamed the plaintiff, an Alabama resident. The plaintiff sued the defendant for defamation in Alabama state court and obtained a default judgment against her. (*Id.* at p. 530.) The defendant ultimately brought a motion in Minnesota state court to vacate the judgment, and the plaintiff brought a cross-motion to enforce it. (*Id.* at p. 531.) The trial court denied the motion to vacate the judgment and ordered it be given full faith and credit. (*Ibid.*)

The Minnesota Supreme Court reversed, concluding the *Calder* effects test required, in addition to the defendant's knowledge the defendant's allegedly tortious conduct would cause harm to the plaintiff in the forum, that the plaintiff show the defendant expressly aimed the tortious conduct at the forum. (*Griffis*, *supra*, 646 N.W.2d at pp. 534, 535.) Although the record supported the conclusion the defendant's statements were "intentionally directed" at the plaintiff, whom the defendant knew to be an Alabama resident, the evidence did not demonstrate the defendant's statements were "'expressly aimed'" at the State of Alabama. (*Id.* at p. 535.) Significant to the court's reasoning was evidence establishing the newsgroup on which the defendant posted the message was not targeted at the State of Alabama or an Alabama audience, but "was organized around the subjects of archeology and Egyptology, not Alabama or the University of Alabama academic community" and its readers "most likely would be spread all around the country—maybe even around the world—and not necessarily in the

Alabama forum." (*Id.* at pp. 535-536.) Thus, "[t]he fact that messages posted to the newsgroup *could* have been read in Alabama, just as they *could* have been read anywhere in the world, cannot suffice to establish Alabama as the focal point of the defendant's conduct." (*Id.* at p. 536.)

In this case, while the allegedly defamatory Facebook posting could be read as being expressly aimed at Plaintiffs, whom Burdick knew to be California residents, Plaintiffs did not present evidence that the Facebook page or the posting were directed at the State of California or a California audience. The readers of the allegedly defamatory Facebook posting "most likely would be spread all around the country—maybe even around the world—and not necessarily in the [California] forum." (*Griffis*, *supra*, 646 N.W.2d at pp. 535-536.)

Also analogous is *Giduck v. Niblett* (Colo.Ct.App. 2014) __ P.3d __ [2014 Colo.App. Lexis 1088], in which the plaintiffs sued the defendants for defamation based on various Internet postings made by the defendants on several Web sites. None of the defendants was a Colorado resident, and the defendants' only relationship with the state was the effects of the Internet postings. (*Id.* at p. __ [2014 Colo.App. Lexis 1088 at pp. **2-**3].) The Colorado Court of Appeals held the plaintiffs failed to make a prima facie showing of specific personal jurisdiction. (*Id.* at p. __ [2014 Colo.App. Lexis 1088 at p. **15].) The defendants' knowledge that the Internet postings would cause harm to Colorado residents was insufficient to establish personal jurisdiction, and the plaintiffs did not allege the statements posted by the defendants were specifically directed at Colorado. (*Id.* at p. __ [2014 Colo.App. Lexis 1088 at pp. **15-**16].) Instead, the defendants' Internet statements were distributed "'as widely as possible.'" (*Id.* at p. __ [2014 Colo.App. Lexis 1088 at p. **16].) Central to the court's conclusion, the plaintiffs had failed to produce evidence that the persons and institutions, to whom or which the defendants' statements were directed, resided or were located in Colorado: The defendants' various Web sites did not focus on Colorado and therefore did not provide

21

sufficient minimum contacts to subject the defendants to jurisdiction in that state. (*Id.* at p. __ [2014 Colo.App. Lexis 1088 at pp. **16-**17].)

In this case, there was no evidence Burdick's Facebook page was focused on California, the allegedly defamatory posting was directed specifically at California residents, or that the persons or institutions, to whom or which the posting was directed— i.e., Burdick's Facebook friends—resided in California.

In *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.* (7th Cir. 2014) 751 F.3d 796 (*Advanced Tactical*), the Seventh Circuit Court of Appeals addressed some of the questions regarding the Internet left unanswered by *Walden*. In *Advanced Tactical*, an Indiana company brought a lawsuit in Indiana against a nonresident corporation for trademark infringement. (*Advanced Tactical*, *supra*, at pp. 798-799.) The district court concluded the exercise of personal jurisdiction over the defendant was proper because the defendant (1) sent misleading "email blasts" to a list that included Indiana residents, (2) maintained an interactive Web site available to Indiana residents, and (3) placed customers on its e-mail list when they made a purchase. (*Id.* at p. 801.) The Seventh Circuit Court of Appeals reversed, concluding those contacts did not support personal jurisdiction in Indiana. (*Id.* at pp. 798, 803.) Maintaining an e-mail list of customers and sending e-mail blasts to them did not show a relation between the defendant and Indiana because "[t]he connection between the place where an email is opened and a lawsuit is entirely fortuitous." (*Id.* at p. 803.) "It may be different if there were evidence that a defendant in some way targeted residents of a specific state, perhaps through geographically-restricted online ads. But in such a case the focus would not be on the users who signed up, but instead on the deliberate actions by the defendant to target or direct itself toward the forum state." (*Ibid.*) The Seventh Circuit concluded the defendant's interactive Web site did not show the defendant had formed a contact with the forum state. (*Ibid.*)

22

In this case, Burdick's "publicly-available Facebook wall" may be considered to be similar to an interactive Web site. But here, as in *Advanced Tactical*, no evidence was presented that Burdick's Facebook "wall" formed a contact with California. No evidence was presented to show Burdick's Facebook page or the allegedly defamatory posting was geographically restricted or targeted California residents.

In *Broadvoice, Inc. v. TP Innovations LLC* (D.Mass. 2010) 733 F.Supp.2d 219, 221-222 (*Broadvoice*), the plaintiffs, a Massachusetts Internet and telephone service provider and two of its executives, sued Texas defendants—a disgruntled subscriber of the provider and his defunct corporation—in Massachusetts. The plaintiffs alleged defamation, trade disparagement, and intentional infliction of emotional distress arising out of postings made by the defendants on the Web site they created as a public forum for subscribers to air their grievances. (*Id.* at pp. 221, 222.) The defendants posted unflattering comments about the plaintiffs, and the Web site included an open letter to the provider, accusing it of illegal business practices. (*Id.* at p. 222.) The district court granted the defendants' motion to dismiss for lack of personal jurisdiction. (*Id.* at p. 227.)

After discussing *Calder*, the district court in *Broadvoice* concluded: "This case does not square with *Calder*. [The] defamatory website was aimed at Massachusetts only in the sense that it could be accessed by Massachusetts residents (along with the rest of the world). [The defendants] did nothing to incite residents of Massachusetts—as opposed to the world at large—to take up arms against [the plaintiff service provider]." (*Broadvoice*, *supra*, 733 F.Supp.2d at p. 226.) In this case too, the record before us shows the allegedly defamatory posting on Burdick's Facebook page was aimed at California "only in the sense that it could be accessed by [California] residents (along with the rest of the world)." (*Ibid.*)

In *Farquharson v. Metz* (D.Mass., July 30, 2013, No. 13-10200-GAO) 2013 U.S.Dist. Lexis 106374, pages *5-*8, the district court concluded the defendant's

23

Facebook postings did not create personal jurisdiction in Massachusetts. The parties disputed whether the defendant had any Facebook friends in Massachusetts. (*Id.* at p. *5.) The court distinguished *Calder* on the ground the defendants in *Calder* could reasonably anticipate being haled into court in California because they wrote for a publication with a circulation of over 600,000 in that state. (*Farquharson v. Metz*, *supra*, 2013 U.S. Dist. Lexis 106374 at p. *6.) "By contrast, [the defendant] posted content that could be seen by any of her Facebook 'friends,' and perhaps by 'friends of friends' as [the plaintiff] alleges, but she did not take any additional steps to specifically aim content at any Massachusetts residents." (*Ibid.*) On the record presented to us, the same can be said of Burdick's allegedly defamatory Facebook posting.

Plaintiffs cite *Edozien v. XS Micro, LLC* (Mass.Super.Ct. 2014) 32 Mass.L.Rptr. 23 (*Edozien*), as supporting the exercise of personal jurisdiction over Burdick. The court in *Edozien*, after reviewing *Walden*, confirmed its prior order denying the defendants' motion to dismiss for lack of personal jurisdiction. The court found that "posting defamatory content on the internet, which specifically names a Massachusetts resident and his company, satisfies the minimum contacts analysis for the proper exercise of personal jurisdiction." (*Edozien*, *supra*, 32 Mass.L.Rptr. 23.)

We disagree with *Edozien*, which, we believe, misapplies the law. The *Edozien* court relied on *Abiomed, Inc. v. Turnbull* (D.Mass. 2005) 379 F.Supp.2d 90, 96, but that case does not support the proposition that posting defamatory information on the Internet alone supports jurisdiction. (*Edozien*, *supra*, 32 Mass.L.Rptr. 23.) In *Abiomed, Inc. v. Turnbull*, the defendant had made trips and telephone calls to Massachusetts, during which he allegedly obtained confidential information about the plaintiff, a Massachusetts company, and the dissemination of that information became the basis for the plaintiff's claims. (*Abiomed, Inc. v. Turnbull*, *supra*, at pp. 94-95.) In his Internet postings, the defendant claimed to have obtained inside information about the plaintiff. (*Id.* at p. 94.) The defendant was aware those Internet postings were being read by

24

Massachusetts residents and, in several instances, directed to those residents. (*Id.* at p. 95.) The plaintiff sued the defendant for misappropriation and defamation, based on the trips into Massachusetts and the Internet postings. (*Id.* at p. 94.) The district court denied the defendant's motion to dismiss for lack of personal jurisdiction because the defendant intentionally directed his postings at the plaintiff and to an audience of Massachusetts residents. (*Id.* at pp. 95-96.)

## III.

### Discovery

Plaintiffs argue that if we grant Burdick's writ petition, we should allow them to conduct discovery related to the issue of personal jurisdiction. In opposing Burdick's motion to quash service of summons, Plaintiffs made the same request of the respondent court, which had no reason to consider the request because it denied the motion to quash.

A trial court has discretion to continue the hearing on a motion to quash service of summons for lack of personal jurisdiction to allow the plaintiff to conduct discovery on jurisdictional issues. (*HealthMarkets, Inc. v. Superior Court*, *supra*, 171 Cal.App.4th at p. 1173.) In light of the issues presented by this writ proceeding and our resolution of them, we conclude the respondent court should be given the opportunity to consider Plaintiffs' request for discovery. Any discovery must be limited to the issue of specific personal jurisdiction based on the required minimum contacts we have identified in this opinion as relevant to the jurisdictional analysis.

Burdick has advised us of a recent opinion, *Young v. Daimler AG* (2014) 228 Cal.App.4th 855, which he contends supports denial of jurisdictional discovery. In *Young*, the Court of Appeal concluded that the plaintiffs had waived any issues regarding inadequate discovery by failing to raise them in the trial court. (*Id.* at p. 867, fn. 7.) Here, Plaintiffs timely requested jurisdictional discovery in the respondent court. Also,

25

in *Young*, the Court of Appeal concluded discovery likely would not have led to the production of facts establishing general jurisdiction over the defendant. (*Ibid.*) We cannot reach the same conclusion at this stage as to specific jurisdiction over Burdick.

## DISPOSITION AND ORDER

Burdick's petition for writ of mandate is granted in part. Let a writ of mandate issue directing the respondent court to (1) vacate its order denying Burdick's motion to quash service of summons, and (2) rule on Plaintiffs' request to conduct jurisdictional discovery. If the court denies the request for discovery, then the court must enter an order granting the motion to quash. If the court grants the request for discovery, the court must consider any additional, relevant evidence submitted and rule on the motion to quash based on the entire factual record and in light of this opinion. The order to show cause is discharged. Burdick is entitled to recover his costs incurred in this writ proceeding.

FYBEL, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

IKOLA, J.