Filed 3/8/21; Certified for Publication 3/29/21 (order attached)

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

DONGXIAO YUE,

     Plaintiff and Appellant,

v.

WENBIN YANG,

     Defendant and Respondent.

A159145

(Contra Costa County Super. Ct. No. MSC 1601118)

California resident Dongxiao Yue (plaintiff) filed a lawsuit against several defendants, including Canadian resident Wenbin Yang, for unfair competition and defamation. The trial court granted Yang's motion to quash service of summons and complaint for lack of personal jurisdiction. (Code Civ. Proc., § 418.10.)

We reverse. We conclude plaintiff satisfied his burden of demonstrating Yang was subject to specific jurisdiction in California and that Yang failed to show the exercise of jurisdiction was unreasonable.

1

FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff lives in Northern California. He is a software developer. Plaintiff established and moderated a "Chinese language online community website called Zhen Zhu Bay" (ZZB). Many of ZZB's bloggers and readers are California residents. Muye Liu is a California resident. He owns and operates a competing website, Yeyeclub.com (Yeyeclub). Yang posted on both websites. He lives in Canada.

A.

*Complaint*

Plaintiff filed a verified complaint in Contra Costa County in propria persona against several defendants, including Yang and Liu, alleging claims for unfair competition and defamation. The gist of the complaint was that defendants engaged in unlawful business practices and defamed plaintiff to destroy ZZB and plaintiff's reputation.

The complaint alleged Yang posted on ZZB and Yeyeclub. Plaintiff removed Yang's "sexually explicit, violent and insulting" posts from ZZB. Liu, however, encouraged Yang to continue posting on Yeyeclub. Thereafter, Yang began making "defamatory attacks" on plaintiff on Yeyeclub. According to the complaint, Yang and Liu worked together to attack plaintiff on Yeyeclub and "induced many ZZB bloggers to join" Yeyeclub.

On Yeyeclub, Yang threatened to "bully Plaintiff in Plaintiff's backyard in California and openly challenged Plaintiff to sue him in California" so that Yang "could leave a glorious record in . . . American legal history." In another post, Yang announced that he would travel to San Francisco to carry out a meeting "as originally planned." The post contained email communications

---

[1] We recite only those facts necessary to resolve the issue on appeal, disregarding references to, and evidence of, other lawsuits filed by plaintiff.

2

between Yang and others which referred to plaintiff by name.  Later, Yang posted that he "arrived in California" and urged his "collaborators" to come to "the meeting."  Yang also asserted plaintiff had "violated [a] court order" and that plaintiff's "family was nearly driven to the streets."  In another post, Yang accused plaintiff of stealing his information—and committing burglary—using a "Trojan horse virus."  Yang also published a fax he sent plaintiff asserting that plaintiff had attacked him with an Internet virus.

The complaint alleged California had personal jurisdiction over Yang because he had sufficient minimum contacts with the forum state.  According to the complaint, Yang intentionally directed his defamatory messages at plaintiff in California, and intended to, and did, cause harm there.

B.

*Motion to Quash*

Yang moved to quash service of summons and complaint in propria persona, arguing California lacked personal jurisdiction over him because he lived in Canada and lacked minimum contacts with California.  Yang also argued the exercise of jurisdiction would be unreasonable because he lived in Canada.

In a supporting declaration, Yang averred he had been a Canadian resident for over twenty years.  He asserted he had no contact with California and had not directed any advertising, including on the Internet, to California residents.  Yang also averred, on information and belief, that Yeyeclub.com was an online discussion forum where users interacted with each other anonymously and that the website's content "was not directed exclusively at California residents."  Finally, Yang testified the statements at issue in the lawsuit were made by "anonymous posters."  Yang did not, however, deny making the statements.

3

Plaintiff's opposition asserted California had specific jurisdiction over Yang. Plaintiff argued Yang purposefully availed himself of forum benefits by intentionally aiming his defamatory comments at California, where many of Yeyecub's bloggers and readers resided. Plaintiff also noted Yang's posts on Yeyeclub mentioned traveling to—and harming plaintiff in—California. Additionally, plaintiff argued his claims arose out of Yang's contacts with California and that exercising jurisdiction over Yang was reasonable. Finally, plaintiff requested jurisdictional discovery before the court ruled on the motion to quash.

In a detailed declaration, plaintiff averred Yang posted defamatory information about him on Yeyeclub. Although the posts did not use Yang's name, plaintiff provided a detailed explanation of how he was able to identify Yang as the author of the posts. The declaration described Yang's posts—which appeared on the "front pages of the website"—and attached numerous documents, including the posts. In addition to posts identified in his complaint, plaintiff also cited Yang's post that asserted plaintiff's criminal liability under "California Penal Code Section 461(1)." Yang posted that he " 'would go to California State and bully Dr. Yue in his physical backyard' " and invited Yue to sue him in California: " 'I always stated that I would destroy you the shyster in U.S. federal court . . . . I want to go to California State for a tour, with your support, what a pleasure.' " Plaintiff further averred that Yang knew plaintiff lived in California, and that California "residents . . . read Yang's defamatory statements." The declaration also described Yang's direct correspondence with plaintiff, which included faxing plaintiff and posting the fax on Yeyeclub.

In reply, Yang argued posting comments on the Internet did not establish personal jurisdiction, particularly where "no single posting" was

4

made under his name. Yang also claimed plaintiff failed to establish the posts were aimed at California or had a California audience. He characterized plaintiff's assertions as speculative, unsupported by "corroborating evidence," and based on hearsay, but he did not object to plaintiff's declaration. In a supplemental declaration, Yang averred the Yeyeclub posts were not made "with the name of Yang." He also denied ever visiting California.

C.

*Order Granting the Motion to Quash*

The court granted the motion. First, it determined there was no basis for general jurisdiction over Yang, a Canadian resident. Next, and relying on *Burdick v. Superior Court* (2015) 233 Cal.App.4th 8 (*Burdick*), the court concluded there was no basis for specific jurisdiction over Yang because the interaction between plaintiff and Yang "took place on the Internet" and posting information on websites did not constitute " 'minimum contacts' " with California.

According to the court, plaintiff alleged Yang harmed his reputation by publishing injurious postings about him to California residents, but had not presented evidence that Yang purposefully availed himself of forum benefits by aiming or intentionally targeting his conduct at California or a California audience. The court did not specifically address the content of the postings, Yang's alleged visit to California, or plaintiff's evidence identifying Yang as the author of the posts.

Finally, the court opined that exercising jurisdiction over Yang "would not comport with the notion of fair play and substantial justice" because plaintiff was "the only link between [Yang] and the forum." The court did not address plaintiff's request for jurisdictional discovery.

5

# DISCUSSION

## I.

### *General Principles*

" 'California courts may exercise jurisdiction over a nonresident on any basis consistent with the federal or state Constitution. [Citation.] To comport with federal and state due process, California may only exercise jurisdiction when a defendant has sufficient minimum contacts with the state to satisfy " 'traditional notions of fair play and substantial justice.' " [Citations.] Under the minimum contacts test, we examine the quality and nature of a defendant's action to determine whether requiring him to submit to jurisdiction in California is reasonable and fair.' " (*Zehia v. Superior Court* (2020) 45 Cal.App.5th 543, 551–552 (*Zehia*).)

When a defendant moves to quash service of process on jurisdictional grounds, the plaintiff has the burden of proving, by a preponderance of the evidence, facts justifying the exercise of jurisdiction. (*Zehia, supra,* 45 Cal.App.5th at p. 552; *ViaView, Inc. v. Retzlaff* (2016) 1 Cal.App.5th 198, 209–210 (*ViaView*).) "The plaintiff must come forward with affidavits and other competent evidence to carry this burden." (*ViaView*, at p. 210.) A verified complaint is the functional equivalent of an affidavit. (*Evangelize China Fellowship, Inc. v. Evangelize China Fellowship* (1983) 146 Cal.App.3d 440, 444.) "If the plaintiff meets this burden, 'it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable.' " (*ViaView,* at p. 210.)

Where—as here—evidence " 'of jurisdictional facts is not in dispute, the issue whether the defendant is subject to personal jurisdiction is a legal question subject to de novo review.' " (*ViaView, supra,* 1 Cal.App.5th at p. 210.) " ' "The ultimate question whether jurisdiction is fair and reasonable

6

under all of the circumstances, based on the facts which are undisputed and those resolved by the court in favor of the prevailing party, is a legal determination warranting our independent review." ' " (*Ibid.*)

II.

*California Has Specific Jurisdiction over Yang*

" 'Personal jurisdiction may be either general or specific.' " (*Zehia, supra,* 45 Cal.App.5th at p. 552.)  Here, we consider only whether Yang is subject to specific jurisdiction.  A court may exercise specific jurisdiction over a nonresident defendant only if:  (1) the defendant has purposefully availed himself of forum benefits; (2) the controversy relates to, or arises out of, the defendant's contacts with the forum; and (3) the exercise of jurisdiction comports with fair play and substantial justice.  (*Ibid.*)  The specific jurisdiction analysis focuses on " ' " 'the relationship among the defendant, the forum, and the litigation.' " ' " (*Ibid.*)

A.     Purposeful Availment

The first element of specific jurisdiction is whether the defendant purposefully availed himself of forum benefits.  (*Zehia, supra,* 45 Cal.App.5th at p. 552.)  Courts apply the " 'effects test' " to determine purposeful availment in the defamation context.  (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269.)  Under this test, intentional conduct occurring elsewhere may give rise to jurisdiction in California where it is calculated to cause injury in California.  The defendant must expressly aim or target his conduct toward California, with the knowledge that his intentional conduct would cause harm in the forum.  (*Id.*, at pp. 271–273.)

As the trial court recognized, mere posting of defamatory comments on the Internet, even with the knowledge that the plaintiff is in the forum state, is not enough to establish specific jurisdiction.  (*Burdick, supra,*

7

233 Cal.App.4th at p. 20.) But specific jurisdiction may be established under the effects test where a defendant sends "California-focused" social media messages "directly" to California residents "with knowledge the recipients [are] California residents" for the alleged purpose of causing reputational injury there. (*Zehia, supra,* 45 Cal.App.5th at pp. 556–558.)[2]

Here, plaintiff's evidence—his verified complaint and his uncontradicted declaration—established Yang purposefully availed himself of forum benefits. The evidence showed Yang targeted his conduct at California: he communicated directly with plaintiff and posted on Yeyeclub, a website owned and operated by a California resident that had a California audience.[3] Plaintiff also offered competent evidence that Yang's posts had a California focus: Yang threatened to "bully" plaintiff in California and communicated his plan to travel to San Francisco. Yang also announced that he had "arrived in California" and urged his "collaborators" to join him.

Additionally, plaintiff provided evidence that Yang's posts were directed to, and received by, a California audience: plaintiff and other California residents "read Yang's defamatory statements" on Yeyeclub. Finally, plaintiff offered evidence that Yang posted on Yeyeclub with the intent to cause harm in California, where Yang knew plaintiff lived. Together, this evidence demonstrated Yang's "suit-related conduct created

---

[2] *Zehia* was decided after the trial court's decision in this case.

[3] In the trial court, Yang averred the Yeyeclub posts were made anonymously, but Yang did *not* deny communicating with plaintiff or posting on the website. Thus, for our purposes, the evidence is undisputed that Yang made the posts. On appeal, Yang critiques the evidence plaintiff offered in opposition to the motion to quash. We disregard these contentions. In the trial court, Yang did not object to plaintiff's evidence and he cannot raise an evidentiary objection for the first time on appeal. (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1020.)

8

a substantial connection between [Yang] and California." (*Zehia, supra,* 45 Cal.App.5th at pp. 556–558.)

In granting the motion to quash, the trial court relied on *Burdick*, a defamation case arising out of the posting of allegedly defamatory material on Facebook. There, a group of physicians and others (collectively, bloggers) published entries on an Internet blog questioning the safety and efficacy of a skin care product. In response, a representative of the skin care company made a public Facebook post suggesting the bloggers had criminal histories. (*Burdick, supra*, 233 Cal.App.4th at pp. 14–15.) The bloggers filed a lawsuit in California against the skin care representative, an Illinois resident, alleging several torts, including defamation. (*Id.* at pp. 13–14.) The trial court denied the defendant's motion to quash service of summons, concluding California had specific jurisdiction under the " ' "effects" ' test." (*Id.* at p. 16.)

The *Burdick* court reversed. (*Burdick, supra*, 233 Cal.App.4th at pp. 16, 30.) It held the defendant's suit-related conduct—the public posting of an allegedly defamatory statement on social media—did not create a "substantial connection" with California sufficient to confer specific jurisdiction. (*Id.* at p. 25.) The court noted the defendant published the post from Illinois and that there was no evidence the social media page "had a California audience" or "a California focus." (*Ibid.*) *Burdick* held that posting statements about a person on social media or the Internet, "while knowing that person resides in the forum state, is insufficient in itself to create the minimum contacts necessary to support specific personal jurisdiction in a lawsuit arising out of that posting. Instead, it is necessary that the nonresident defendant not only intentionally post the statements . . . but that the defendant expressly aim or specifically direct

9

his or her intentional conduct at the forum, rather than at a plaintiff who lives there." (*Id.* at p. 13.)

This case bears some resemblance to *Burdick* because the defendants in both cases posted the allegedly defamatory material online. But that is where the similarity between this case and *Burdick* ends. Unlike the defendant in *Burdick*, Yang communicated directly with plaintiff. Additionally, and in contrast to the Facebook post in *Burdick*, which did not mention the bloggers by name, Yang's posts on Yeyeclub mentioned plaintiff by name and threatened to harm him in California. The posts repeatedly referred to California, suggested California criminal liability, and threatened a California visit by Yang. Lastly, in *Burdick*, there was no evidence the skin care representative's social media page "had a California audience." (*Burdick, supra,* 233 Cal.App.4th at p. 25.) Here, plaintiff offered uncontradicted evidence that Yeyeclub had a California audience, and that California residents read the allegedly defamatory postings.

Plaintiff has thus shown more than a mere posting on the Internet combined with a defendant's awareness that his conduct might cause injury in California. Rather, he has shown that Yang targeted his postings at plaintiff, emphasized the California connection, and threatened to come to California, with an awareness that Californians would be in the audience. Plaintiff has established the purposeful availment element.

B.    Relatedness Between the Controversy and Forum Contacts

The second element for specific jurisdiction is whether the controversy relates to, or arises out of, the defendant's contacts with the forum. (*ViaView, supra,* 1 Cal.App.5th at p. 216.) There must be " 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the

10

State's regulation.' [Citation.] '[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.' " (*Bristol-Myers Squibb Co. v. Superior Court* (2017) 137 S.Ct. 1773, 1780.) This element is easily satisfied here. The verified complaint alleged Yang's defamatory posts on Yeyeclub injured plaintiff's business and his reputation in California. On this record, the undisputed evidence demonstrates there is an "adequate link" between plaintiff's claims and Yang's contacts with California. (*Id.* at p. 1781.) Yang does not persuasively argue otherwise.

C.    Fair Play and Substantial Justice

Because plaintiff established facts justifying the exercise of specific jurisdiction, Yang had the burden to show "the assertion of jurisdiction would be unfair or unreasonable." (*Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 563.) Yang "has not made the requisite showing." (*Id.* at p. 563.)

"An otherwise valid exercise of personal jurisdiction 'is presumed to be reasonable.' [Citation.] Therefore, [the] defendant 'must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.' " "A determination of reasonableness rests upon a balancing of interests: the relative inconvenience to defendant of having to defend an action in a foreign state, the interest of plaintiff in suing locally, and the interrelated interest the state has in assuming jurisdiction. [Citation.] The factors involved in the balancing process include the following: 'the relative availability of evidence and the burden of defense and prosecution in one place rather than another; the interest of a state in providing a forum for its residents or regulating the business involved; . . . and the extent to which the cause of action arose out

11

of defendant's local activities.' " (*Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 591, italics added (*Integral Development*).)

To be sure, there is some burden associated with requiring Yang, a Canadian resident, to litigate this case in California. (*Integral Development, supra,* 99 Cal.App.4th at p. 592.) But that is only one factor in assessing reasonableness, and that factor does not weigh heavily in Yang's favor because there is no evidence in the record that Yang would be at a " 'severe disadvantage' in comparison to his opponent" due to his location. (*Burger King Corp. v. Rudzewicz* 471 U.S. 462, 478; *Integral Development,* at p. 592 [burden on foreign defendant in litigating case in California did not establish exercise of jurisdiction was unreasonable].)

Other factors weigh in favor of exercising jurisdiction. For example, evidence supporting plaintiff's claims will likely be found in California, and Yang has not identified any witnesses or evidence located elsewhere. (*Integral Development, supra,* 99 Cal.App.4th at p. 592.) California also "has a manifest interest in providing a local forum for its residents to redress injuries inflicted by out-of-state defendants." (*Id.* at p. 591.) Finally, in targeting California with his conduct, Yang could fairly expect to have been held "answerable on a claim related to those activities." (*Keeton v. Hustler Magazine, Inc.* (1984) 465 U.S. 770, 776.)

Given plaintiff's "showing of the requisite minimal contacts with California, the nexus between those contacts and the claims raised in the lawsuit, and the allegations in the complaint that [Yang] has committed torts causing effects in California," we conclude Yang "has not met his burden of presenting a 'compelling' case that jurisdiction would be unreasonable under all of the circumstances." (*Integral Development, supra,* 99 Cal.App.4th at

p. 593; *Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.*, *supra*, 31 Cal.App.5th at p. 565 [defendant failed to make "compelling case" that exercising jurisdiction would be unreasonable or unfair].)

We conclude Yang is subject to specific jurisdiction in California. Having reached this result, we need not consider whether the court erred by failing to consider—and grant—plaintiff's request for jurisdictional discovery.

## DISPOSITION

The order granting Yang's motion to quash service of summons and complaint is reversed. The court is ordered to enter a new order denying the motion and reinstating the complaint as to Yang. Plaintiff is entitled to recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____
Seligman, J.*

WE CONCUR:


_____
Needham, Acting P. J.


_____
Burns, J.


A159145


---

\* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

COURT OF APPEAL, FIRST APPELLATE DISTRICT
350 MCALLISTER STREET
SAN FRANCISCO, CA 94102
DIVISION 5

DONGXIAO YUE,
Plaintiff and Appellant,
v.
WENBIN YANG,
Defendant and Respondent.

A159145
Contra Costa County Super. Ct. No. MSC1601118

BY THE COURT:

The written opinion which was filed on March 8, 2021, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is ordered published in the official reports.

Date: __03/29/2021____      _____NEEDHAM, J._____, Acting P.J.

msch

Superior Court of Contra Costa County, Hon. Steven K. Austin

Dongxiao Yue, in pro. per., for Plaintiff and Appellant.

Wenbin Yang, in pro. per., for Defendant and Respondent.