NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

DEC 24 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DONOVAN JANUS,

Plaintiff-Appellant,

v.

MARK ANTHONY FREEMAN,

Defendant-Appellee.

No. 19-55199

D.C. No. 2:18-cv-08944-CJC-AS

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Submitted April 17, 2020[**]
Pasadena, California

Before: SCHROEDER and COLLINS, Circuit Judges, and BAYLSON,[***] District
Judge.

Memorandum joined by Judge SCHROEDER and Judge COLLINS;
Dissent by Judge BAYLSON

Donovan Janus appeals the district court's dismissal of his action against

Mark Anthony Freeman for lack of personal jurisdiction. Janus, a resident of

---

[*] This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without
oral argument. *See* FED. R. APP. P. 34(a)(2)(C).

[***] The Honorable Michael M. Baylson, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

California, brought an action in the Central District of California against Freeman, a resident of Texas, for defamation and copyright infringement. Janus alleged that, after Freeman's wife moved to California and began working for, and dating, Janus, Freeman undertook a campaign of harassment that included defamatory comments and unauthorized use of copyrighted photographs. Reviewing de novo, *see Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), we affirm.

1. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing FED. R. CIV. P. 4(k)(1)(A)). Because California law allows the exercise of personal jurisdiction to the full extent permitted by the U.S. Constitution, *see* CAL. CODE CIV. PROC. § 410.10, the personal-jurisdiction issue presented here turns exclusively on the limits imposed by federal due process. *Daimler*, 571 U.S. at 125. On appeal, the central question is whether Janus made a sufficient prima facie showing with respect to one of the threshold elements needed to establish specific personal jurisdiction in a tort case such as this one, namely, that Freeman "'purposefully direct[ed] his activities'" at California.[1] *Picot v. Weston*, 780 F.3d

---

[1] We reject Janus's one-sentence contention, unsupported by any authority, that Freeman's mere use of the services of Facebook and Instagram, "both California companies," provides personal jurisdiction on the alternative theory that Freeman thereby purposely availed himself of the privilege of doing business in California. *See United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made

2

1206, 1211 (9th Cir. 2015) (citation omitted); *see also Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (defamation is an intentional tort for personal-jurisdiction purposes); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) ("Because Mavrix has alleged copyright infringement, a tort-like cause of action, purposeful direction 'is the proper analytical framework.'" (citation omitted)).

Where, as here, a defendant allegedly committed intentional torts outside the forum that are calculated to cause injury to the plaintiff in the forum, "[w]e evaluate purposeful direction under the three-part 'effects' test traceable to the Supreme Court's decision in *Calder v. Jones*, [465 U.S. 783 (1984)]." *Schwarzenegger*, 374 F.3d at 803. "Under this test, a defendant purposefully directed his activities at the forum if he: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Picot*, 780 F.3d at 1214 (citation omitted). Because "[t]he exact form of our analysis varies from case to case and 'depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue,'" *id*. (citation omitted), we address Janus's defamation and copyright claims separately.

---

in passing and not supported by citations to the record or to case authority are generally deemed waived.").

3

2.  Citing *Calder*, Janus contends that an "intentional tort," such as defamation, "knowingly directed at a forum resident satisfies the minimum contacts test."  This overstates the holding of *Calder*, as clarified by the subsequent decision in *Walden v. Fiore*, 571 U.S. 277 (2014).  Under the correct standard, we conclude that Janus failed to establish a prima facie case of purposeful direction as to Freeman's alleged defamatory activities.

a.  In *Calder*, Shirley Jones, a California actress, brought a libel suit in California state court against a reporter and editor who worked for the *National Enquirer* at its headquarters in Florida.  465 U.S. at 784–86.  The defendants' tortious conduct consisted of making phone calls to California sources and writing about Jones's California activities in a libelous article that was heavily circulated in California, thereby injuring Jones primarily in California.  *Id*. at 788–89.  Because "California [was] the focal point both of the story and of the harm suffered," the Supreme Court concluded that jurisdiction over the defendants was "proper in California based on the 'effects' of their Florida conduct in California."  *Id*. at 789.

In *Walden*, the Court expressly rejected the view that *Calder*'s effects test is satisfied merely by the defendant's commission of an intentional tort that is aimed at a person known to be a resident of the forum state.  571 U.S. at 289–90.  As the Court explained, "an injury is jurisdictionally relevant only insofar as it shows that

4

*the defendant* has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether *the defendant's conduct* connects *him* to the forum in a meaningful way." *Id*. at 290 (emphasis added). On that basis, the Court held that a defendant's allegedly tortious activities against Nevada residents at a Georgia airport were insufficient to permit Nevada to assert personal jurisdiction over that defendant. *Id*.

In distinguishing *Calder*, the *Walden* Court stated that "[t]he crux of *Calder* was that the *reputation-based 'effects'* of the alleged libel connected the defendants to California, not just to the plaintiff." 571 U.S. at 287 (emphasis added). Those reputation-based effects, the Court noted, "would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens." *Id*. at 288. "In this way, the 'effects' caused by the defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the *defendants' conduct to California*, not just to a plaintiff who lived there." *Id*. (emphasis added). And "[t]hat connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction." *Id*.

b. In light of *Walden*'s clarification of *Calder*, we conclude that Janus failed to establish a prima facie case that Freeman engaged in conduct that connected him

5

to California in the way that *Walden* describes. To the extent that Janus's allegations of reputation-based effects are not entirely conclusory, *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), those allegations, coupled with the evidence Janus submitted in opposition to the motion to dismiss, do not sufficiently connect Freeman's conduct to California, as opposed to a person (Janus) who happens to live there.

Janus emphasizes the allegations and evidence that Freeman corresponded over Facebook Messenger with employees of his company, which Freeman knew to be based in California, and made defamatory comments in those posts. But the mere making of defamatory comments to persons known to be Californians is not sufficient, without more, to establish purposeful direction under *Walden*. What matters is the creation of "reputation-based 'effects'" within California, 571 U.S. at 287, and Janus's showing on this score is essentially nonexistent. In sharp contrast to *Calder*, in which the defendants "caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State" and in which "the 'brunt' of that injury was suffered by the plaintiff in that State," *id.* (quoting *Calder*, 465 U.S. at 788–89), Janus relies on only a handful of communications that Freeman made to (at most) a few Californians, and there is no evidence or even an allegation that these communications had reputation-based effects of the sort that would be sufficient to warrant haling Freeman into a

6

California court. Even construing the well-pleaded allegations and evidence in Janus's favor, they at most establish "only an attenuated affiliation with the forum." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (simplified). That is not enough to establish personal jurisdiction.[2] *See id*.

3. We also reject Janus's contention that Freeman's use of two copyrighted photographs is sufficient to establish personal jurisdiction with respect to Janus's copyright claims against Freeman. Relying upon pre-*Walden* authority, Janus argues that "the willful infringement of copyrights known by the infringer to be owned by a resident of a forum" is sufficient to establish personal jurisdiction. Janus ignores the fact that *Axiom* expressly held that this "individualized targeting" theory of personal jurisdiction in copyright cases did not survive *Walden*. *See* 874 F.3d at 1069–70. Under *Axiom*, Freeman's use of the two photographs on Instagram accounts with no followers "did not create a substantial connection with California" and does not support personal jurisdiction there. *Id*. at 1070 (simplified).

**AFFIRMED.**

---

[2] Contrary both to *Iqbal* and to *Walden*, the dissent wrongly accepts Janus's purely conclusory allegations of harm as a sufficient showing of the required reputation-based effects. *See* Dissent at 15–18. The dissent also notes that Janus may be able to state a cause of action under California law without any showing of injury beyond the statements themselves. *See id*. at 18. But that cannot obviate the need to establish "reputation-based 'effects'" in California, as required by *Walden*'s federal due process standards for asserting personal jurisdiction. 571 U.S. at 287.



<u>Donovan Janus v. Mark Anthony Freeman</u>, No. 19-55199

BAYLSON, District Judge, dissenting:

## I. Introduction

Although the majority opinion correctly states the generally applicable law concerning personal jurisdiction, the majority does not recognize that the Supreme Court's most recent personal jurisdiction case, <u>Walden v. Fiore</u>, "d[id] not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State." 571 U.S. 277, 290 n.9 (2014). Cases from this Court and other courts decided after <u>Walden</u> which have considered the question of virtual contacts support a finding that this case be allowed to proceed in the District Court.

## II. Factual Background and Procedural History

Given the fact-specific nature of the personal jurisdiction inquiry, I will review the relevant facts here.[1] Plaintiff, a resident of Los Angeles County, California, is the founder and chief executive officer of isomnio, Inc., a California corporation doing business as "17hats." Defendant resides in Rosenberg, Texas. Plaintiff and Defendant are "connected" to each other through Defendant's soon-to-be ex-wife, Amanda Freeman ("Mrs. Freeman"). Defendant and Mrs. Freeman are in the process of divorce and child custody proceedings in Texas. Amidst these

---

[1] The facts in this section are supplied by Plaintiff's complaint.

proceedings, Plaintiff began a romantic relationship with Mrs. Freeman.  Mrs. Freeman now resides in California and works for 17hats.

Upon learning of Mrs. Freeman's relationship with Plaintiff, Defendant began a harassment campaign targeting Plaintiff, 17hats, and others.  Using a number of "colorfully" named Instagram accounts, Defendant followed and commented on posts made by Plaintiff and 17hats.  Examples of account names used by Defendant to harass Plaintiff include: djanussucks, donovan_does_small_animals, donovan_tinyballs, dn_photograph_3, dutch_dipshit, and xanax_chompin_conehead.

Plaintiff, as well as his business, and its employees and customers were the clear targets of this activity.  In one specific instance, Defendant aimed his accusations about Plaintiff to employees and customers of 17hats when, claiming to be interested in a job, Defendant engaged in a conversation via Facebook Messenger with 17hats' Director of Operations.  In his complaint, Plaintiff describes this incident as follows:

> Beginning on or about August 15, 2017, Defendant Freeman falsely claimed to be interested in a job at 17hats, in order to engage in a campaign of defamatory statements.  Defendant Freeman, during the Hearing described below, admitted to engaging in this conversation (see ¶33, infra).  Made to the Director of Operations for 17hats, these messages were visible to the several employees of the support department, and word of them spread quickly amongst 17hats' largely female workforce.  Defendant Freeman made statements such as:

2

a. "While the questions I have for Donovan are related to employment they are also of a very personal nature. So to avoid causing anyone any embarrassment I really prefer not to share them with anyone but him. Of course, I'm sure the questions I have are the very reason he doesn't want to talk to me."

b. "[I]t sounds like [Mr. Janus' company] has some questionable hiring practices. It almost seems like the company makes up jobs for people that catch someone's eye . . . as if the company could be used as a sort of personal matchmaking service-if someone catches Donovan's eye, he creates a job for them."

The support personnel employed by 17hats interpreted these as statements of fact about the workplace environment created by Mr. Janus at his company.

Plaintiff describes another incident in which Defendant targeted 17hats as follows:

On or about September 21, 2017, one of the Defendants (on information and belief, Defendant Freeman) used an account on the Instagram service, "Donovan_does_small_animals," to post on a live video about 17hats in which Mr. Janus himself was speaking. The comment was: "Antifa says hi!" This comment, including the username that falsely stated Mr. Janus "does small animals," was visible to multiple customers of Mr. Janus' company watching the online video (a significant number of whom are located in California), as well as employees of 17hats located in California.

Additionally, Defendant, on several occasions, made false and disparaging comments regarding Plaintiff's business and personal life to Mrs. Freeman, who at the time lived in California. Defendant stated that Plaintiff had been "investigated

3

for a crime of moral turpitude" and employed "bottom feeders and criminals." Defendant told Mrs. Freeman that Plaintiff beat his last wife, was a "crooked con-artist," and had been accused of tax evasion, domestic abuse, and fraud.

Throughout the course of Defendant's conduct, he knew that the individuals he was in contact with lived and worked in California, and that 17hats was based in California. As early as March 20, 2017, he sent flowers to Mrs. Freeman at the 17hats office in California. Mrs. Freeman also told Defendant that 17hats had offices in Irvine and Pasadena.

### A. Prior Legal Proceedings

On October 17, 2017, Plaintiff sought a civil harassment restraining order against Defendant in Los Angeles Superior Court. During a hearing on December 5, 2017, Defendant personally appeared in a California court, testified under oath, and denied any knowledge of the relevant Instagram accounts. After the court denied his request, Plaintiff brought a second state court action, Janus v. DOES 1-20, LASC No. 688426, on December 29, 2017, in which he sought damages and injunctive relief. Plaintiff issued subpoenas to Instagram and Apple, the production of which linked the relevant Instagram accounts to Defendant. Eventually, on October 18, 2018, the court granted Defendant's unopposed motion to quash service based on lack of personal jurisdiction. In an April 30, 2018 hearing pertaining to his divorce proceedings in Texas, contrary to his prior

4

testimony, Defendant admitted to creating several of the Instagram accounts, as well as conversing with 17hats' employees via Facebook Messenger.

### B. Procedural History

On October 16, 2018, Plaintiff filed the complaint in this case in the U.S. District Court for the Central District of California. Plaintiff brought four causes of action: two claims of copyright infringement, defamation per se under California law, and defamation per quod under California law. On November 20, 2018, Defendant filed a motion to dismiss for lack of personal jurisdiction, and the District Court granted the motion. Plaintiff filed a timely appeal on February 18, 2019.

## III. Legal Principles

"Where, as here, a motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." Love v. Associated Newspapers, Ltd., 611 F.3d 601, 608 (9th Cir. 2010). "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [the plaintiff's] favor." Id.

This Court employs a three-prong test to assess whether a defendant has sufficient contacts with a forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct
> his activities or consummate some transaction with the

forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015). "The plaintiff has the burden of proving the first two prongs." Id. If he or she does so, the burden shifts to the defendant to make a "compelling case" that the exercise of jurisdiction would be unreasonable. Id. at 1212.

I agree with the majority that the correct test to apply with respect to the first prong of this test is the "effects test" of Calder v. Jones, 465 U.S. 783 (1984). "Under this test, a defendant purposefully directed his activities at the forum if he: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Picot, 780 F.3d at 1214 (citation and internal quotation marks omitted).

**A. Calder and Walden**

As the majority fully and accurately describes the facts and holding of Calder, I will not do so again here. After its description, the majority goes on to state that "[i]n Walden, the Court expressly rejected the view that Calder's effects

6

test is satisfied merely by the defendant's commission of an intentional tort that is aimed at a person known to be a resident of the forum state." Mem. Dispo. at 4.

In Walden, a Georgia police officer working as a deputized DEA agent seized a large amount of cash from two professional gamblers at an Atlanta airport. Id. at 279–80. The officer later helped to draft a false affidavit that showed probable cause for the seizure. Id. at 280. The gamblers, residents of California and Nevada, filed suit against the officer in Nevada, alleging violations of their Fourth Amendment rights. Id. at 280–81. As the majority opinion emphasizes, in declining to exercise jurisdiction the Supreme Court explained that "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id. at 290.

### B. Calder and Walden Applied to the Internet

Legal scholars have recently noted the challenges in applying the specific personal jurisdiction analysis to contacts with a forum state that take place solely online, and some have suggested alternative frameworks. See, e.g. Alan M. Trammell and Derek E. Bambauer, Personal Jurisdiction and the Interwebs, 100 CORNELL L. REV. 1129 (2015). These scholars recognize the problem posed by the internet, when an individual in one state can cause serious harm anywhere in the

world, without leaving the comfort of their home.  See, e.g. Lee Goldman, From Calder to Walden and Beyond: The Proper Application of the Effects Test in Personal Jurisdiction Cases, 52 SAN DIEGO L. REV. 357, 358 (2015) ("With the advent of the Internet and the explosion of new technology, individuals are accused of causing injury in distant states in which they have had no direct contacts on a daily basis.").  Several courts, including this Court and California state courts have attempted to address this issue as well.

Although preceding Walden, in Mavrix Photo, Inc. v. Brand Techs., Inc. this Court noted the challenges the Internet places on this inquiry:

> In prior cases, we have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed.  On the one hand, we have made clear that maintenance of a passive website alone cannot satisfy the express aiming prong.  On the other, we have held that operating even a passive website in conjunction with something more—conduct directly targeting the forum—is sufficient.  In determining whether a nonresident defendant has done something more, we have considered several factors, including the interactivity of the defendant's website; the geographic scope of the defendant's commercial ambitions; and whether the defendant individually targeted a plaintiff known to be a forum resident.

647 F.3d 1218, 1231 (9th Cir. 2011) (citations and internal quotation marks omitted) (emphasis added).  In Mavrix, Mavrix Photo, Inc. sued Brand Technologies, Inc., an Ohio company, in the Central District of California, alleging

8

that Brand infringed Mavrix's copyright when Brand posted Mavrix's copyrighted photos on Brand's website. Id. at 1221–23. This Court found that personal jurisdiction over Brand was proper in the Central District because Brand had "continuously and deliberately exploited" the California market for its website. Id. at 1230. It tailored advertisements to appeal to its California user base and marketed stories with a specific focus on California. Id. at 1230. "Based on the website's subject matter, as well as the size and commercial value of the California market, [this Court] conclude[d] that Brand anticipated, desired, and achieved a substantial California viewer base." Id. The "consumption of its products" in California was not random or fortuitous; instead, it was a predictable consequence. Id. The Court concluded:

> Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed. But where, as here, a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have "expressly aimed" at that state.

Id. at 1231. In a more recent case, this Court distinguished Mavrix, finding that the website in question "lack[ed] a forum-specific focus" because the market for the website was global. AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1210 (9th Cir. 2020).

9

Since <u>Walden</u>, District Courts in this Circuit have drawn distinctions relying on the specific factual circumstances of each case in order to determine whether a defendant's conduct sufficiently "targets" the forum state in a situation where, as here, a plaintiff's business reputation is the target of defamation. In <u>Gallagher v. MaternityWise Int'l, LLC</u>, the court drew a distinction between defendants who were targeting the plaintiff's business and were aware of its location and those that were not. No. 18-00364, 2019 WL 961982 (D. Haw. Feb. 27, 2019). The Court distinguished <u>Walden</u> because it "involved interference with personal finances, which affected the plaintiffs personally, regardless of their state of residence." <u>Id.</u> at *6. In another case, the court found personal jurisdiction over the defendant based on "comments on social media that were allegedly defamatory, that included references to plaintiff living in and doing business in Washington, and that identified plaintiff's Washington businesses by name." <u>Russell v. Samec</u>, No. 20-263, 2020 WL 7048403, at *5 (W.D. Wash. Oct. 8, 2020), report and recommendation adopted, No. 20-263, 2020 WL 7043592 (W.D. Wash. Dec. 1, 2020). Alternatively, in <u>Smart Energy Today, Inc. v. Hoeft</u>, the court found that defamatory "comments posted on AngiesList.com and Yelp.com are available to anyone in the United States with Internet access" and the determinative fact was that there was no evidence the defendants "encouraged California residents to

10

access the sites or that they targeted California residents in any way." No. 15-8517, 2016 WL 8200432, at *2 (C.D. Cal. June 20, 2016).

As there is no post-Walden Ninth Circuit decision that is definitive on the issues addressed here, I will also consider California Courts of Appeal decisions which discuss circumstances similar to this case. Less than a year after Walden, the Court of Appeal of California decided a case concerning social media conduct as the foundation for personal jurisdiction in a defamation case. In Burdick v. Superior Court, the court held

> that posting defamatory statements about a person on a Facebook page, while knowing that person resides in the forum state, is insufficient in itself to create the minimum contacts necessary to support specific personal jurisdiction in a lawsuit arising out of that posting. Instead, it is necessary that the nonresident defendant not only intentionally post the statements on the Facebook page, but that the defendant expressly aim or specifically direct his or her intentional conduct at the forum, rather than at a plaintiff who lives there.

183 Cal. Rptr. 3d 1, 3 (Cal. Ct. App. 2015). The only conduct connecting the defendant to California in Burdick was an "allegedly defamatory posting on his Facebook page." Id. at 24.

More recently, two California Courts of Appeal cases, applying Calder, Walden, and Burdick, found social media conduct was sufficient to establish personal jurisdiction. In Zehia v. Superior Court, the Court considered "whether California [could] exercise specific personal jurisdiction over a nonresident

11

defendant who sent allegedly defamatory statements to California residents through private online social media messages with the aim of interfering with the residents' personal relationships." 258 Cal. Rptr. 3d 778, 779 (Cal. Ct. App. 2020).

The court found personal jurisdiction was appropriate for three reasons. First, "[the defendant] transmitted the allegedly harassing statements directly to a California resident [the plaintiff] and the allegedly fabricated conversations directly to another California resident . . . with knowledge the recipients were California residents." Id. The Court distinguished this case from Burdick, by noting that there the social media post was public and had "no apparent California focus, which suggested he did not intentionally target California as opposed to any other jurisdiction." Id. at 787-88 (quotation omitted). But, "[h]ere, by contrast, the evidence indicate[d] [the defendant] sent private social media messages aimed exclusively at a California audience." Id. at 788. "Second, the reputation based effects of the alleged defamation connected [the defendant] to California" as in Calder. Id. "Third, the allegedly defamatory conversations had a distinct California focus" because the defendant specifically referenced that plaintiff had ruined the reputation of women in San Diego and referenced conduct which had occurred in San Diego. Id.

12

Next, in San Pedro v. Menorca, the defendant published several postings on a website defaming the plaintiff, a minister and member of the California bar who also served as his church's lawyer. No. G058050, 2020 WL 4344006, at *1 (Cal. Ct. App. July 29, 2020).[2] These postings "were disseminated on multiple social media sites, including Facebook, Twitter, Instagram, and Google." Id. In finding that these contacts were sufficient for jurisdiction in California, the Court noted that the defendant's "words were expressly aimed at a California audience, even though the record is unclear whether Californians read the posting." Id. at *5. Distinguishing this case from Burdick, the Court noted that the postings here "identified [the plaintiff] as a California lawyer in danger of losing his state law license, highlighted his alleged failures in California lawsuits, and warned California [church] followers about him, a thinly-veiled adjuration against hiring him." Id. at *5. Further, the Court relied on the fact that California "was the focal point of the alleged harm" because the plaintiff's "legal reputation in California, as well as the reputation of [the church's] California legal department, ha[d] suffered a blow as a result of the postings."

---

[2] "Even though unpublished California Courts of Appeal decisions have no precedential value under California law, the Ninth Circuit is not precluded from considering such decisions as a possible reflection of California law." Daniel v. Ford Motor Co., 806 F.3d 1217, 1223 n.3 (9th Cir. 2015) (quotations omitted). While not considering a question of California law here, given the similar factual circumstances, I find this case to be relevant.

## IV.   Analysis

Based on the above discussion, I disagree with the majority's conclusion that Plaintiff's allegations do not state a prima facie case of personal jurisdiction.

### A. The Effects Test

Applying the principles discussed above, Plaintiff's allegations, considered in the light most favorable to Plaintiff, require a conclusion that Defendant purposefully directed his activities at the forum because he: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that he knew was likely to be suffered in the forum state. Picot, 780 F.3d at 1214. Here, Defendant committed an intentional act by engaging in a harassment campaign against Plaintiff. The analysis will focus on the second and third factors.

### i.   Express Aiming at California

The discussion of legal principles above requires the conclusion that, in order for personal jurisdiction to be appropriate, Internet-based conduct must have a connection to the forum state which goes beyond simply being directed at an individual who lives in the forum state. This standard is met here. Defendant's conduct, aimed at Plaintiff, his company, and additional third-parties in California makes clear that Defendant intentionally and deliberately targeted a California audience. Defendant specifically engaged with Plaintiff's California-based company and communicated directly with its employees in California. These

14

actions are directed at California because they are aimed not only at harming Plaintiff, but also his business, its reputation, its customers and employees, and third parties such as Mrs. Freeman. These harms could only be felt in California.

The majority states that "the mere making of defamatory comments to persons known to be Californians is not sufficient, without more, to establish purposeful direction under <u>Walden</u>." Mem. Dispo. at 6. There is "something more" here. Beyond knowing that the individuals to whom he made defamatory comments were Californians, Defendant made his defamatory remarks to them when they were in California, about events in California, and caused harm which could only be felt in California. Plaintiff has alleged several specific instances in which Defendant contacted individuals in California through multiple means. He made claims about Plaintiff's behavior in California and targeted Plaintiff's business reputation, his employees and customers, making his claims targeted at a California audience.

This holding does not conflict with <u>Walden</u>. To begin, <u>Walden</u> did not involve any online conduct, and in fact expressly declined to comment on how virtual conduct would affect the personal jurisdiction analysis. 571 U.S. at 290 n.9. Further, the conduct in <u>Walden</u> was entirely different from the conduct here. In <u>Walden</u>, the defendant's only interactions with the plaintiffs occurred in Georgia, and the plaintiffs' injuries were only tied to the forum state in that one of

15

the plaintiffs resided there. By contrast, here, Defendant reached out to individuals in California and created harm which is felt in California not simply because that's where Plaintiff happens to live, but because Defendant's intent was to harm the reputation of Plaintiff's business, by contacting his employees and customers, and others, all of whom are located in California.

Defendant's focused attacks on Plaintiff's business by reaching out directly to individuals in California beyond Plaintiff alone make this case more similar to Zehia and San Pedro. Distinguishing their facts from Burdick, those cases relied on conduct which tied the alleged defamation to California, and ensured that the damage could only be felt in California. For example, in Zehia, the court relied on the fact that as here, the defendant communicated the defamatory statements directly to individuals that he knew to be in California. The court also relied on the fact that as here "the reputation based effects of the alleged defamation connected [the defendant] to California." Zehia, 258 Cal. Rptr. 3d at 788. Additionally, in San Pedro, the Court relied on the damage caused to plaintiff's reputation as an attorney in California, finding that this reputational harm was focused on the forum state because it specifically impacted his ability to conduct business in the state.

For all these reasons, because Defendant attacked Plaintiff's business through multiple means directed at the state of California, the harm is expressly aimed at California.[3]

### ii. Harm Felt in California

Throughout the course of his conduct, Defendant knew, or had reason to know, that the harm caused by his actions would occur in California. Defendant knew that Plaintiff was a resident of California and that 17hats was a California-based company with offices in Irvine and Pasadena. As discussed above, his conducted was directed towards 17hats' employees and customers. Therefore, Defendant must have known the harm caused by his actions would be felt in California.

The majority opinion focuses its analysis on "the creation of 'reputation-based 'effects' within California" and finds that Plaintiff has not adequately demonstrated such effects. Mem. Dispo. at 6. The opinion discusses various

---

[3] The Defendant's alleged perjury in a California court could be an additional factor warranting the exercise of person jurisdiction over Defendant in California, but was not raised by Plaintiff before the District Court or this Court, and thus we cannot consider it. See, e.g., Glenwood Farms, Inc. v. O'Connor, 666 F. Supp. 2d 154, 157 (D. Me. 2009) (finding that "a witness who knowingly makes a false material declaration under oath" could foresee that he would be haled back into court in that state). But see Pinson v. United States, No. 18-4293, 2020 WL 5868134 (C.D. Cal. Aug. 21, 2020) (declining to find personal jurisdiction where the defendant's only contact with California was past trial testimony, where he was not a party to the case, and the prior testimony was not the subject of the plaintiff's claims).

defamatory statements made by Defendant and evidence suggesting that the individual to whom those statements were made did not believe them to be true. This does not negate, as a matter of law, Plaintiff's allegations of harm caused by Defendant's conduct. At this stage in the proceedings, Plaintiff must only make a prima facie showing of purposeful direction with the facts taken in the light most favorable to him, which Plaintiff's complaint satisfies.

Among other causes of action, Plaintiff brings an action for defamation per se. "A slander that falls within the first four subdivisions of Civil Code section 46 is slander per se and requires no proof of actual damages." Regalia v. The Nethercutt Collection, 90 Cal. Rptr. 3d 882, 886 (Cal. Ct. App. 2009). Slander per se includes statements regarding someone "having been indicted, convicted, or punished for [a] crime" as well as "injur[ing] him in respect to his office, profession, trade or business." Cal. Civ. Code § 46. Defendant's statements accusing Plaintiff of several crimes as well as impinging his business reputation demonstrate a prima facie case of harm caused in California. Plaintiff alleges that these statements, at a minimum, harmed his reputation and caused him humiliation. Such allegations are actionable under California law without proof of harm beyond the statements themselves.[4]

---

[4] While this analysis focuses on Plaintiff's claim of defamation per se, if this Court has jurisdiction over one of Plaintiff's claims, it also has pendent personal jurisdiction over the others. See Action Embroidery Corp. v. Atl. Embroidery,

## B. Fair Play and Substantial Justice

To determine whether the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," this court considers seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Dole Food Co. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002).

I find that the weight of these factors are in favor of Plaintiff. By targeting Plaintiff and his California-based company, as discussed above, Defendant purposefully injected himself into the state of California's affairs. California has "a strong interest in providing an effective means of redress for its residents tortiously injured." Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998) (citation and internal quotation marks omitted). Additionally, the

---

Inc., 368 F.3d 1174, 1181 (9th Cir. 2004) ("When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts.").

19

burden on Defendant is minimal. He travels to California regularly of his own volition, and this Court has noted that "in this era of fax machines and discount air travel," requiring a defendant to travel to litigate a case is reasonable. Id.

The third factor is not implicated, as here, where the forum state and the defendant are both in the United States. See id. at 1323. The fifth factor "focuses on the location of the evidence and witnesses" but "is no longer weighed heavily given the modern advances in communication and transportation." Id. Even if this factor were to remain relevant, all of the evidence and witnesses are in California.

While there are some factors weighing against the exercise of jurisdiction, they are not significant. Regarding factors six and seven, Plaintiff concedes that while it is more inconvenient for him to litigate in Texas, this burden is relatively slight and that Texas exists as an alternative forum for this case. Despite these factors weighing in Defendant's favor, I find that it is still reasonable to require Defendant to litigate this case in California.

## V. Conclusion

I recognize that courts must proceed cautiously when finding personal jurisdiction based on virtual conduct, but where the alleged facts satisfy existing standards, as here, finding jurisdiction is important to deter and, if proven, penalize tortious conduct. Taking the facts in the light most favorable to Plaintiff, he has clearly satisfied the prima facie standard. I would therefore reverse the District

Court's dismissal and remand this case for further proceedings.  I respectfully

dissent.