Filed 9/29/23  J.D.F. v. Crawford CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| J.D.F., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DENNIS CYRIL CRAWFORD, <br><br> Defendant and Respondent. | B321170 <br><br> Los Angeles County <br> Super. Ct. No. 21STCP03057 |

APPEAL from an order of the Superior Court of Los Angeles County.  Gregory Keosian, Judge.  Affirmed.

Law Offices of Salar Atrizadeh, Salar Atrizadeh; Jeff Lewis Law, Jeffrey Lewis and Sean C. Rotstan for Plaintiff and Appellant.

Mazur & Mazur and Janice R. Mazur for Defendant and Respondent.

\* \* \* \* \* \* \* \* \* \*

Plaintiff and appellant J.D.F. contends the trial court erred in granting defendant's Code of Civil Procedure[1] section 418.10 motion to quash. Plaintiff argues the evidence established personal jurisdiction over defendant and respondent Dennis Cyril Crawford (also known as Yuan Xun). In the alternative, plaintiff contends the trial court abused its discretion in denying plaintiff jurisdictional discovery. We disagree. Not only did plaintiff fail to serve defendant with the summons in this action, but plaintiff's evidence was insufficient to meet his burden of showing personal jurisdiction over defendant if he had been served. The trial court did not abuse its discretion in denying jurisdictional discovery where plaintiff failed to adequately raise the issue below. We therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

We limit our recitation of the facts to those relevant to the issues on appeal.

**1.     The Parties**

Plaintiff is a United States citizen of Chinese descent who frequently travels internationally for work and for personal purposes. He claims to live in Los Angeles with his parents, but the record does not bear this out.

To support his claim of Los Angeles residency, plaintiff cites to four documents: his verified complaint and his and each of his parents' declarations in support of his opposition to defendant's motion to quash.

His verified complaint alleges that he was, at all times relevant, "an individual residing in Los Angeles." But his declaration belies this claim. Plaintiff declares he "view[s]

---

[1]     All undesignated statutory references are to the Code of Civil Procedure.

2

[him]self" as a California resident because his parents moved to California in 2018. His parents live in Newport Coast—a community in Orange County, not Los Angeles County. His credit card statements are sent to his parents' address in California, which he calls his only "permanent mailing address" in the world. He states his parents have bank accounts, pay taxes, and are registered to vote in California, but makes no corresponding claims as to himself.

In their declarations, his parents echo that, aside from his parents' address where they moved in 2018, plaintiff "has had no other permanent residences . . . for the past four years since he traveled to Beijing, China in 2017 to pursue employment opportunities" and his parents' home "is where Plaintiff would reside if/when he returns to the United States."

Not only does plaintiff's evidence fail to establish he has ever lived in California, it fails to establish he has ever even *been* here. The only indication that he has been to California is that his declaration purports to have been executed in Los Angeles. But his parents' declarations make clear that he was not in the United States on the day it was signed. Moreover, his credit card statements from the preceding month show he was in Hong Kong. They include charges at a restaurant and an optician in Hong Kong, among other charges in Hong Kong dollars.

As to defendant, he is the founder and operator of an entity called Sino American Reunion (SAR). The record establishes he has never been to California. He denies living in China but does not say where he lives—except to say generally that he now lives in "Asia."

3

**2.     SAR**

SAR is a separate entity from defendant, whose form plaintiff does not identify.  SAR's purpose is to provide assistance to persons of Chinese descent born outside of China who desire to move to China.  SAR operates through its own website and other means of online communication.  Defendant operates SAR's website and is an active participant in its various online and social media communities.  SAR has a five-member steering committee and one of its members goes to college in California.

SAR's website states that its material is "largely aimed at second-generation American citizens of Chinese heritage."  SAR's website states that a large number of East Asian immigrants and Chinese Americans live in California.  Plaintiff offers the following statistics to substantiate this:  California is the state with the largest "Asian population," at 6.7 million, followed by New York (1.9 million), Texas (1.6 million), New Jersey (1 million) and Washington (0.9 million).  Together, these states are home to 55 percent of the "Asians" in the United States.  Plaintiff's statistics do not provide a breakdown of the "Asian" population in these states by national origin.

SAR's intended audience is not limited to Americans, however.  A SAR-operated "Discord server in the Reddit subcommunity 'r/chineseamerican' " offers content "for CHINESE DIASPORA users:  Chinese Americans, Chinese Canadians, Chinese British, Chinese Australians, Hong Kong HK Americans/Canadians/etc., Taiwanese Americans/Canadians/etc., basically people of Chinese ancestry living outside the Greater China Area."

Discord is a company "based in California."  Plaintiff presents no evidence that any of the other websites or services

4

plaintiff alleges defendant and SAR used is based in California. SAR's domain is hosted by a Colorado company, another Colorado company provides a related service, SAR's server is provided by a New York company, and defendant used another web hosting company based in Oregon.

**3.    Allegations of the Operative Complaint**

Plaintiff met defendant online and met him in person in Beijing, China, in late 2017.  According to the complaint, at the time of their meeting, defendant sought to exploit plaintiff's education and professional background to advance defendant's efforts to promote SAR.

Though plaintiff's role with SAR is unclear, his allegations indicate he had some involvement at some point, because in 2018 he told defendant "he no longer wanted to participate in SAR." This prompted defendant to begin a campaign of stalking and harassment against plaintiff, including public and private communications to third parties that plaintiff claims were defamatory or otherwise tortious.

Much, but not all, of defendant's alleged conduct involved private communications between defendant and plaintiff alone. As to communications with third parties, at one point defendant discussed the prospect of an in-person meeting in Hong Kong between plaintiff's "business contacts" and defendant.  Plaintiff asserts these "business contacts" were "based in California" at the time, and defendant knew this because, when scheduling a call with them months earlier, he acknowledged the time difference between his location and California.

Defendant falsely presented plaintiff as being affiliated with SAR, using his "personal profile and professional credentials to recruit new members for [SAR] to his commercial benefit," and

5

posted online without plaintiff's permission a personal essay plaintiff had written and other personal information about plaintiff.

In 2021, plaintiff demanded defendant to stop publicizing his personal information and using his essay. Defendant refused. Plaintiff retained counsel who reiterated plaintiff's demand to defendant in writing. Defendant still refused to comply and continued to harass plaintiff. He called plaintiff a "liar" and "coward" in SAR's Discord chat group and urged its members to harass plaintiff. He also started a new website about plaintiff in the guise of a "fan page" that posted more of plaintiff's personal information, including that he was in Hong Kong.

### 4. The Proceedings Below

Plaintiff sued defendant and SAR in Los Angeles Superior Court in September 2021. SAR is not a party to this appeal. Plaintiff never filed a proof of service of the summons or complaint and does not claim to have served defendant with those documents. Plaintiff did, however, attempt to serve defendant with a motion for a protective order at an address in China. His proof of service stated that this was accomplished by "regular United States Mail."

Defendant specially appeared to contest service of the motion to quash "and any [s]ummons and [c]omplaint." Defendant argued he was entitled to have the court quash service both because he was never served with the summons and complaint and, even if he had been, defendant would not be subject to personal jurisdiction in California. As to the latter ground, defendant denied having any "constitutionally minimum contacts whatsoever with the State of California."

6

Plaintiff opposed defendant's motion to quash. His opposition rested primarily on the notion that *he himself* is a California resident. Plaintiff also asserted there was "evidence indicating" he worked in California, but his only jobs referenced in the opposition were in China. The opposition said little about *defendant's* purported contacts with California aside from his contacts with plaintiff. Plaintiff's declarations in support of his opposition contained substantial factual matter not referenced in his opposition, including information about SAR's website, its content, and intended audience discussed above.

The trial court granted defendant's motion to quash. First, it found plaintiff had not served defendant with the summons and complaint. Second, it concluded that defendant's contacts with California were inadequate to support the court's exercise of jurisdiction in any event. The court denied plaintiff's motion for additional time to conduct jurisdictional discovery because plaintiff failed to demonstrate such discovery was likely to lead to facts establishing jurisdiction.

Plaintiff timely appealed.

## DISCUSSION

### 1. The Trial Court Did Not Err in Granting Defendant's Motion to Quash

#### a. Section 418.10

Section 418.10 provides that a defendant may move to quash service of summons for lack of personal jurisdiction over him. A court lacks jurisdiction over a defendant who was not effectively served with a summons. (*MJS Enterprises v. Superior Court* (1984) 153 Cal.App.3d 555, 557 (*MJS*) ["A summons is the process by which a court acquires personal jurisdiction over a defendant in a civil action"].) A court also lacks jurisdiction over

7

a defendant who does not have constitutionally sufficient contacts with the forum.  (*International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 (*International Shoe*).)

When a defendant moves to quash for lack of personal jurisdiction, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction.  Where the defendant claims a defect in service, the plaintiff must present facts to show effective service of process.  (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1439–1440.)  Where the defendant claims constitutionally insufficient contacts with the forum to support jurisdiction, the plaintiff must present facts showing the defendant had enough minimum contacts with the state to make it fair and reasonable to subject the defendant to the jurisdiction of the California courts.  (*Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 17 (*Burdick*).)  Once evidence showing minimum contacts with the forum state is established, " 'it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable.' "  (*Ibid.*, quoting *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*).)

### b.    Standard of review

When the evidence pertaining to jurisdiction is undisputed, whether the defendant is subject to personal jurisdiction is a legal question subject to de novo review.  (*Burdick, supra*, 233 Cal.App.4th at p. 17.)  When the evidence is disputed, we accept the trial court's resolution of factual issues, draw all reasonable inferences in support of the trial court's order, and review the trial court's determination of factual issues for substantial evidence.  (*Ibid*.)  Thus, we independently review whether jurisdiction exists based on the facts which are

8

undisputed and those resolved by the court in favor of the prevailing party. (*Ibid*.)

### c. Defendant was not served with the summons.

Plaintiff does not contest the trial court's finding that he never served defendant with the summons in this action. Instead, he calls his failure to serve the summons a "[r]ed [h]erring in [l]ight of the [s]ervice of the [m]otion for [p]rotective [o]rder." Plaintiff is wrong. Without effective service of the summons, the trial court lacked jurisdiction over defendant, and defendant's motion to quash was properly granted on that basis. (See *MJS*, *supra*, 153 Cal.App.3d at p. 557 ["Notice of the litigation does not confer personal jurisdiction absent substantial compliance with the statutory requirements for service of summons"]; see also *Tri-State Mfg. Co. v. Superior Court of Los Angeles County* (1964) 224 Cal.App.2d 442, 444 [noncompliance with statutes governing service of summons adequate basis for quashing service].) The motion was properly granted for plaintiff's failure to serve defendant with a summons.

### d. Defendant's contacts with California are inadequate to support jurisdiction.

Even if plaintiff had served defendant with the summons and complaint, we agree with the trial court that defendant's contacts with California would not suffice to support the exercise of personal jurisdiction over him.

Under section 410.10, California courts "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." The United States Constitution allows a state to exercise jurisdiction over a nonresident defendant if the defendant has sufficient "minimum contacts" with the forum such that "maintenance of the suit does

9

not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe*, *supra*, 326 U.S. at p. 316.) Personal jurisdiction may be either general or specific. (*Vons, supra*, 14 Cal.4th at p. 445.) Only specific jurisdiction is relevant here because plaintiff does not argue the trial court had general jurisdiction over defendant.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on "the relationship among the defendant, the forum, and the litigation." ' " (*Walden v. Fiore* (2014) 571 U.S. 277, 283–284.) The exercise of jurisdiction is permissible only if each of the following is satisfied: (1) the defendant has purposefully availed himself of forum benefits with respect to the matter in controversy; (2) the controversy is related to or arises out of the defendant's contacts with the forum; and (3) the exercise of jurisdiction would comport with fair play and substantial justice. (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262*,* 269 (*Pavlovich*).) Because we conclude plaintiff's evidence was inadequate to show purposeful availment we do not consider the other requirements.

Ordinarily, the purposeful availment inquiry focuses on the defendant's intent. The defendant must have purposefully and voluntarily directed his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on his contacts with the forum. (*Pavlovich, supra*, 29 Cal.4th at p. 269.) Thus, purposeful availment occurs where a nonresident defendant purposefully directs his activities at residents of the forum, purposefully derives benefit from his activities in the forum, creates a "substantial connection" with the forum, deliberately engages in

10

significant activities within the forum, or has created continuing obligations between himself and residents of the forum. (*Swenberg v. dmarcian, Inc.* (2021) 68 Cal.App.5th 280, 294–295.) This avoids subjecting a defendant to jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. (*Id.* at p. 295.)

Plaintiff argues the purposeful availment prong is satisfied here based on a test commonly used in the defamation context, even though none of his claims is for defamation. This test is known as the "effects test." (*Yue v. Yang* (2021) 62 Cal.App.5th 539, 547 (*Yue*).) "Under this test, intentional conduct occurring elsewhere may give rise to jurisdiction in California where it is calculated to cause injury in California. The defendant must expressly aim or target his conduct toward California, with the knowledge that his intentional conduct would cause harm in the forum." (*Ibid.*)

Plaintiff rests his entire purposeful availment argument on *Yue*, which states that "specific jurisdiction may be established under the effects test where a defendant sends 'California-focused' social media messages 'directly' to California residents 'with knowledge the recipients [are] California residents' for the alleged purpose of causing reputational injury there." (*Yue, supra,* 62 Cal.App.5th at p. 547.) Plaintiff's efforts to analogize *Yue* fail.

In *Yue*, the nonresident defendant communicated directly with the plaintiff, who lived in California, and posted defamatory messages about him on a website owned and operated by another California resident with a California audience. The defendant threatened to travel to San Francisco to confront and bully the plaintiff, and he told other California residents he had arrived in

California and asked them to join him.  (*Yue*, *supra*, 62 Cal.App.5th at pp. 547–548.)  "Together, this evidence demonstrated [the defendant's] 'suit-related conduct created a substantial connection between [the defendant] and California.' " (*Id.* at p. 548.)

Unlike the plaintiff in *Yue*¸ the trial court concluded plaintiff was not a California resident.  Again on appeal, plaintiff focuses on his own purported California residency without explaining how that matters in deciding the question of personal jurisdiction over defendant.  Plaintiff's primary argument is that the trial court lacked substantial evidence to conclude plaintiff was not a California resident.  As the party with the burden of proof below, the question is not one of substantial evidence to support a finding but whether his evidence was " '(1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)

Plaintiff contends his assertion of residency was undisputed.  But merely asserting residency is insufficient to establish it.  Rather, the claim must be supported by probative facts.  (*Bernou v. Bernou* (1911) 15 Cal.App. 341, 345–346.) Plaintiff's probative facts do not compel the conclusion plaintiff was sufficiently present in or otherwise connected to California to be a resident by any measure.

Plaintiff's evidence of his connection to California establishes only that he uses his parents' address in California as his mailing address.  Contrary to his assertion in briefing that he attested he lives with his parents in California and his parents

12

declared he lives in California, too, the declarations say no such thing. None states he has ever lived in California. None even states he has ever been to California. His parents' contacts with California are irrelevant to whether plaintiff has any presence in the state. Plaintiff's and his parents' declarations establish that he went to China in 2017, before his parents moved to California in 2018, and he does not claim to have been to California since then. During that time, he worked for at least two companies in China and has moved around to other places, none of which plaintiff claims was California.

The only other California connections plaintiff argues show purposeful availment are: (1) defendant knowingly arranged a call with plaintiff's "business contacts" in California; (2) defendant "expressly targeted" California for recruitment to SAR; and (3) defendant used services from Discord, which is based in California. These contacts, to the extent reflected in the record, are too insubstantial to amount to purposeful availment.

As for the call with the "business contacts" when they were in California, plaintiff makes no claim based on the content of that call. The only evidence about what transpired on that call is that plaintiff was on the call with defendant while they were both in Asia—plaintiff's written messages about the call confirm he was in the same time zone as defendant.

Plaintiff's complaint does include allegations that defendant wrongfully communicated with the same business contacts a few months later in a group chat with plaintiff. But this communication lacks any connection to California except that some of the recipients were "based in" California at the time. There is no evidence that defendant's communication with plaintiff's California "business contacts" otherwise related to

13

California, much less that they had a "California focus." In fact, the evidence is to the contrary: the purportedly wrongful communication expressly addressed the prospect of the "business contacts" meeting plaintiff in Hong Kong. Plaintiff was apparently in Hong Kong at the time and, in any event, does not claim he was in California. Under the *Yue* analysis, defendant's communications with plaintiff and the "business contacts" about a meeting in Hong Kong had a Hong Kong focus, not a "California focus." (See *Yue*, *supra*, 62 Cal.App.5th at pp. 547–548 [communications between nonresident defendant, resident plaintiff, and other California residents pertaining to conduct within California had "California focus"].)

As to the assertion that defendant "expressly targeted" California for recruitment to SAR, this is based solely on evidence that many people of Chinese origin, one characteristic of SAR's target audience, live in California. We are unpersuaded that this amounts to "express target[ing]" of California. California has the largest population of any state in the United States. Its size alone cannot confer jurisdiction over nonresidents who post information on the Internet. Plaintiff offers evidence that California has a disproportionately large "Asian" population. If we accept plaintiff's evidence of "Asian" populations by state as a proxy for persons of Chinese origin, the same evidence shows other populous states in our nation also have a large population of persons of Chinese origin, and California amounts for less than a third of all such persons in the United States. That an audience exists in California does not establish that the audience was specifically targeted among the various other states in which an audience also exists.

Rather, the evidence shows SAR sought audiences wherever they might be living outside of China. Its website says its "material is largely aimed at second-generation *American* citizens of Chinese heritage." (Italics added.) Its Discord site invites participation by "people of Chinese ancestry *living* [*anywhere*] *outside the Greater China Area*." (Italics added.) Plaintiff offers no evidence SAR's content is tailored to a California audience, limited in its access to California residents, or even that it has a significant California following. Again, this is different than *Yue*, where plaintiff offered evidence that the site where defendant posted his allegedly defamatory statements, which was run by a California resident (*Yue, supra*, 62 Cal.App.5th at p. 543), "had a California audience, and that California residents read the allegedly defamatory postings" (*id.* at p. 549).

As to defendant's use of the California-based Discord web service, this contact is incidental. California is home to many social media companies. Plaintiff offers no authority that a defendant's mere use of a California-based social media platform to defame a plaintiff is material to the question of a California court's jurisdiction over the defendant. There is no evidence that Discord's operator viewed, participated in, or had any interest in defendant's communications about plaintiff. In contrast, in *Yue*, the defendant posted about the plaintiff on a California-based web platform that competed with the plaintiff's own California-based web platform and the owner of the competing web-based platform encouraged and participated in the defendant's attacks on the plaintiff. (*Yue, supra*, 62 Cal.App.5th at p. 543.)

15

## 2. The Trial Court Did Not Abuse Its Discretion in Denying Plaintiff's Request for Jurisdictional Discovery.

"A plaintiff attempting to assert jurisdiction over a nonresident defendant is entitled to an opportunity to conduct discovery of the jurisdictional facts necessary to sustain its burden of proof. [Citation.] In order to prevail on a motion for a continuance for jurisdictional discovery, the plaintiff should demonstrate that discovery is likely to lead to the production of evidence of facts establishing jurisdiction." (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 127.)

The trial court has broad discretion to determine whether to grant a continuance to allow for jurisdictional discovery and such a ruling "will not be disturbed in the absence of manifest abuse." (*Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 487; accord, *In re Automobile Antitrust Cases I & II*, *supra*, 135 Cal.App.4th at p. 127.)

Here, the trial court denied plaintiff's request to take jurisdictional discovery for plaintiff's failure to even argue that discovery would be likely to uncover evidence of sufficient contacts to establish jurisdiction. We find no abuse of discretion in that determination. In his opposition, plaintiff requested discovery based on the bare assertions that "discovery is likely to produce evidence of additional California contacts by Defendant relating to this legal action," and that "[i]t's certainly arguable that further discovery would likely lead to the production of evidence establishing jurisdiction." Without specifying what facts plaintiff expected to find and how they would be relevant to his claims that defendant is subject to personal jurisdiction in California, there can be no abuse of discretion in the trial court's conclusion that plaintiff waived the issue.

16

**DISPOSITION**

We affirm the trial court's order granting defendant's motion to quash and denying plaintiff's request for jurisdictional discovery. Costs on appeal are awarded to defendant.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.


WILEY, J.

17